SANDRA L. McDONOUGH (SBN 193308)
smcdonough@paulplevin.com
KELLY M. BUTLER (SBN 342394)
kbutler@paulplevin.com
**PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>      v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA and DOES 1 through 10, inclusive,<br><br>      Defendant. | Case No. 22-CV-1506 JLS (WVG)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(1) & (6)]**<br><br>Date:    December 22, 2022<br>Time:    1:30 p.m.<br><br>Judge:    Hon. Janis L. Sammartino<br>Mag. Judge:  Hon. William V. Gallo<br>Crtrm.:    4D<br>Trial Date:  Not Set<br><br>**EXEMPT FROM FEES<br>GOVT. CODE § 6103** |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 6

II.     STATEMENT OF FACTS .............................................................................. 6

III.    STANDARDS ON A MOTION TO DISMISS ............................................. 10

IV.     LEGAL ARGUMENT .................................................................................. 11

        A.      Plaintiff Cannot Move Forward With His Claims Because He
                Did Not Exhaust His Administrative or Judicial Remedies ................ 11

                1.      Plaintiff's Claims are Barred Because He Has Not
                        Exhausted His Administrative Remedies ................................. 11

                2.      Plaintiff's Claims are Barred Because He Has Not
                        Overturned the University's Decision Through a Writ Of
                        Mandate ................................................................................... 12

        B.      Eleventh Amendment Immunity Bars Plaintiff's First, Third, and
                Fourth Claims ..................................................................................... 14

                1.      Plaintiff's First Claim For Violation Of Title II Of The
                        ADA Is Barred By Sovereign Immunity ................................... 15

                2.      The Regents Is Also Immune From Plaintiff's Pendent
                        State Claims ............................................................................ 17

        C.      Plaintiff's Unruh Civil Rights Act Claim Also Fails Because The
                Regents Is Not A "Business Establishment" For Purposes Of The
                Unruh Act ........................................................................................... 19

        D.      The Court Should Not Grant Leave to Amend Because a Writ of
                Mandamus is Outside of its Subject Matter Jurisdiction ..................... 21

V.      CONCLUSION ............................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Akins v. San Diego Cmty. Coll. Dist.*
   2013 WL 40976 (S.D. Cal. Jan. 2, 2013) .......................................................... 18

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................................... 11

*Ass'n of Christian Sch. Int'l v. Stearns*
   362 F. App'x 640 (9th Cir. 2010) ....................................................................... 13

*Aygor v. Regents of Univ. of Minn*
   534 U.S. 533, 540-41 (2002) .............................................................................. 17

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................................... 10

*T.M. ex rel. Benson v. San Francisco Unified Sch. Dist.*
   2010 WL 291828 (N.D. Cal. Jan 19, 2010) ....................................................... 18

*Brooks v. Sulphur Springs Valley Elec. Co-Op*
   951 F.2d 1050 (9th Cir. 1991) ........................................................................... 14

*Cholla Ready Mix, Inc. v. Civish*
   382 F.3d 969 (9th Cir. 2004) ....................................................................... 17, 18

*Clemes v. Del Norte Cty. Unified Sch. Dist.*
   843 F. Supp. 583 (N.D. Cal. 1994) ............................................................... 13, 21

*Doe v. Regents of the Univ. of Cal.*
   891 F.3d 1147 (9th Cir. 2018) ...................................................................... 12, 21

*Federal Maritime Comm'n v. South Carolina State Ports Authority*
   535 U.S. 743 (2002) ........................................................................................... 14

*Franceschi v. Schwartz*
   57 F.3d 828 (9th Cir. 1995) ............................................................................... 14

*Fresno v. Unified Sch. Dist. v. K.U. ex. rel. A.D.U.*
   980 F. Supp. 2d 1160 (E.D. Cal. 2013) .............................................................. 21

*Greater Los Angeles Council on Deafness, Inc. v. Zolin*
   812 F.2d 1103 (9th Cir. 1987) ............................................................... 18

*Gutierrez v. RWD Technologies, Inc.*
   279 F. Supp. 2d 1223 (E.D. Cal. 2003) ................................................ 11

*Guttman v. Khalsa*
   669 F.3d 1101 (10th Cir. 2012) .......................................................... 17

*Hafer v. Melo*
   502 U.S. 21 (1991) .............................................................................. 14

*Jackson v. Hayakawa*
   682 F.2d (9th Cir. 1982) ..................................................................... 14

*Klingler v. Director, Dept. of Revenue, State of Mo.*
   455 F.3d 888 (8th Cir. 2006) ........................................................ 15, 16

*Mathis v. Pacific Gas and Elec. Co.*
   75 F.3d 498 (9th Cir. 1996) ................................................................ 19

*Mitchell v. Los Angeles Community College District*
   861 F.2d 198 (9th Cir. 1988) .............................................................. 14

*Mueller v. U.S.-Corp.*
   2009 WL 273283 (C.D. Cal., Feb. 2, 2009) ........................................ 10

*Myers v. California Dep't of Rehab.*
   2012 WL 3529784 (E.D. Cal. Aug. 14, 2012) .................................... 18

*Pennhurst State Sch. & Hosp. v. Halderman*
   465 U.S. 89 (1984) ................................................................. 14, 17, 18

*Phiffer v. Columbia River Correctional Institute*
   384 F.3d 791 (2004) ...................................................................... 15, 16

*Phiffer v. Columbia River Correctional Institute*
   No. CV 00-1652-BR, 2001 WL 1842049 (D. Or. Sept. 17, 2001) ................... 16

*Reddy v. Litton Indus., Inc.*
   912 F.2d 291 (9th Cir. 1990) .............................................................. 11

*Robertson v. Dean Witter Reynolds, Inc.*
   749 F.2d 530 (9th Cir. 1984) .............................................................. 10

*Seminole Tribe of Fla. v. Florida*
   517 U.S. 44 (1996) ................................................................ 14

*Silvey v. City of Sparks*
   216 Fed.Appx. 686 (9th Cir. 2007) ....................................... 10

*Stanley v. Trustees of California State Univ.*
   433 F.3d 1129 (9th Cir. 2006) ............................................... 18

*Tennessee v. Lane*
   541 U.S. 509 (2004) ............................................................... 15

*Toeller v. Wisconsin Dep't of Corr.*
   461 F.3d 871 (7th Cir. 2006) ................................................. 17

*United States v. Georgia*
   546 U.S. 151 (2006) ........................................................ 15, 16

*Wilson-Combs v. California Dep't of Consumer Affairs*
   2008 WL 227850 (E.D. Cal. Jan. 28, 2008) .......................... 18

**California Cases**

*Abelleira v. District Court of Appeal*
   17 Cal.2d 280 (1941) ............................................................. 11

*Brennon B. v. Superior Ct. of Contra Costa Cty.*
   57 Cal.App.5th 367 (2020) .................................................... 19

*Buhi v. Hannigan*
   16 Cal.App.4th 1612 (1993) .................................................. 20

*Burks v. Poppy Construction Co.*
   57 Cal.2d 463 (1962) ............................................................. 20

*Burnett v. San Francisco Police Dep't*
   35 Cal.App.4th 1177 (1995) .................................................. 20

*Edgren v. Regents of the Univ. of Cal.*
   158 Cal.App.3d 516 (1984) .............................................. 12, 13

*Hart v. Cult Awareness Network*
   13 Cal.App.4th 777 (1993) .................................................... 19

*Isbister v. Boys' Club of Santa Cruz*
    40 Cal.3d 72 (1985) ........................................................................ 20

*Ishimatsu v. Regents of Univ. of Cal.*
    266 Cal.App.2d 854 (1968) ........................................................... 13

*Mata v. City of Los Angeles*
    20 Cal.App.4th 141 (1993) ............................................................ 12

*Mendoza v. Regents of Univ. of Cal.*
    78 Cal.App.3d 168 (1978) ............................................................. 13

*Morton v. Superior Court*
    9 Cal.App.3d 977 (1970) ............................................................... 11

*Paulsen v. Golden Gate Univ.*
    25 Cal.3d 803 (1979) .................................................................... 13

*Pomona Coll. v. Superior Ct.*
    45 Cal.App.4th 1716 (1996) .......................................................... 13

*Sacramento Mun. Util Dist. v. County of Solano*
    54 Cal.App.4th 1163 (1977) .......................................................... 19

*Spanish Speaking Citizens' Found. v. Low*
    85 Cal.App.4th 1179 (2000) .......................................................... 20

*Takahashi v. Bd. of Educ.*
    202 Cal.App.3d 1464 (1988) .................................................... 12, 13

*Yamaha Motor Corp. v. Superior Court*
    185 Cal.App.3d 1232 (1986) .......................................................... 11

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

Fed. R. Civ. P. 12(b)(1) .................................................................... 10

Fed. R. Civ. P. 12(b)(6) .................................................................... 10

**State: Statutes, Rules, Regulations, Constitutional Provisions**

Cal. Const. Art. IX, § 9 ................................................................... 14

Cal. Gov't Code § 11135 ............................................................ 14, 18

Code Civ. Proc. § 51(a) ................................................................... 19

# I.

# INTRODUCTION

Defendant The Regents of the University of California ("The Regents") brings this motion to dismiss Plaintiff John Doe's complaint.  Plaintiff alleges The Regents failed to reasonably accommodate his mental disability by dismissing him from the University of California, San Diego's (the "University") medical program, despite the fact that he was provided four extensions to his graduation deadline and test-taking accommodations for all University examinations.

However, Plaintiff cannot proceed with either his state or federal claims because he has not overturned the University's administrative decision against him through a successful writ of mandamus.  Until he does, he cannot sue for damages or injunctive relief regarding his dismissal from the University.

Even if Plaintiff could proceed, The Regents is immune under Eleventh Amendment Sovereign Immunity from Plaintiff's first, third, and fourth claims for relief.  His third claim additionally fails because The Regents is not a "business establishment" for purposes of the Unruh Civil Rights Act (the "Unruh Act").

As a result, The Regents respectfully requests this Court grant its motion to dismiss, in its entirety, without leave to amend.

# II.

# STATEMENT OF FACTS

Plaintiff enrolled as a medical student with the University in September 2012.  Complaint ¶ 2.  To obtain a medical license in the United States, all medical students must pass the United States Medical Licensing Examination, which consists of three "Step" examinations administered by the National Board of Medical Examiners (the "NBME").  Complaint ¶ 18.  The NBME allows medical students four attempts per Step examination.  *Id*.  Plaintiff alleges the University additionally required its medical students to complete their graduation requirements, including passing the first and second Step examinations, within six years.

1 Complaint ¶ 19.  The NBME, along with its Step examinations and medical

2 licensure requirements, is entirely separate from the University.  Complaint ¶¶ 18,

3 19.

4      Plaintiff took a year-long leave of absence from June 2014 to the summer of

5 2015 to complete research at John Hopkins University unrelated to his medical

6 education.  Complaint ¶ 28.  In May 2015, Plaintiff was involved in a car accident,

7 which he alleges resulted in a mental disability affecting his ability to learn, take

8 exams, and attend school.  Complaint ¶¶ 3, 16.  Plaintiff returned to medical school

9 for the summer quarter after the accident, Complaint ¶ 32, but failed his first Step

10 examination in August 2015.  Complaint ¶ 33.

11      Plaintiff alleges he placed the University on notice of his mental disability

12 and his need for accommodations in December 2015, four months after he failed his

13 first Step examination.  Complaint ¶ 36.  He further alleges that he met separately

14 with Dean Carolyn Kelly and Dean Jess Mandel around that time, who purportedly

15 advised against applying for accommodations with the NBME because they

16 believed it was unlikely the NBME would provide him with accommodations in

17 time to fulfill his University graduation requirements.  Complaint ¶¶ 37, 38.

18 Plaintiff does not allege either Dean Kelly or Dean Mandel discouraged him from

19 requesting reasonable accommodations from the University, or prevented him from

20 applying for accommodations with the NBME.

21      On August 26, 2016, Plaintiff petitioned the University's Standing and

22 Promotions Committee (the "Committee") to extend its six-year graduation policy

23 as an accommodation for his disabilities.  Complaint ¶ 43.  The Committee granted

24 this accommodation without a hearing, giving Plaintiff seven years to complete his

25 graduation requirements.  Complaint ¶ 44.

26      In 2018, the Committee again provided Plaintiff with accommodations,

27 including: "(1) 'Extended test time (1.5 times the standard amount of time…); (2)

28 Separate, quiet, distraction-reduced testing; and (3) 'Extended time to complete

program requirements and graduation requirements (petition required-student to complete all standard processes to obtain time limit extensions).'" Complaint ¶ 53. Plaintiff alleges this was the first time the University had given him accommodations for his disability, despite the fact that the Committee had granted his request for accommodations in 2016 by extending his graduation deadline. Complaint ¶ 44, 53. On April 22, 2019, the Committee again granted Plaintiff an additional one-year extension to complete his graduation requirements, giving him eight years to complete his requirements instead of the standard six, and previously-granted seven. Complaint ¶ 59.

Though Plaintiff had failed his Step examinations three times without accommodations, he did not request accommodations from the NBME until December 17, 2019—over four years after his first failed attempt. Complaint ¶ 61. The University supported his request to the NBME by providing a letter attesting that the University was providing Plaintiff with academic accommodations, and its reasons for doing so. Complaint ¶ 63. Despite this support, the NBME denied Plaintiff's request for accommodations, as the University had previously predicted and expressed to Plaintiff. Complaint ¶ 64.

On April 17, 2020, Plaintiff petitioned the University for a third extension to his graduation requirement deadline. Complaint ¶ 65. The University granted this request on May 4, 2020, after granting an additional University-wide extension due to the COVID-19 pandemic. Complaint ¶ 67. Plaintiff's final deadline to complete his graduation requirements was now September 1, 2020. *Id*. After he failed the second Step examination for the second time, Plaintiff petitioned the Committee for even more additional time; however, given Plaintiff had already been attending medical school for eight years and had attempted the NBME Step examinations five times, the Committee denied his fifth request for accommodations. Complaint ¶¶ 69, 70. Plaintiff did not meet his graduation requirements and was dismissed from the University on September 1, 2020. Complaint ¶ 71.

Plaintiff appealed his dismissal from the University to the Interim Dean of the University of California, San Diego School of Medicine.  Complaint ¶ 75.  He alleges this appeal was denied on the grounds that Plaintiff did not contend the Committee's procedures were not adhered to or that its decision was arbitrary and capricious.  Complaint ¶ 76.  Notably, in denying his appeal, the Interim Dean observed that Plaintiff was "granted multiple extensions of the 6-year time limit to complete M.D. graduation requirements, but ultimately failed to meet the final deadline set by the committee. The record indicates the Committee was aware of [Plaintiff's] individual circumstances and considered them. Thus, the [Committee's] decision was neither arbitrary nor capricious."  Complaint ¶ 76.

Plaintiff now alleges the University discriminated against him by:

(1) failing to timely engage in the interactive process after being notified of his disability and need for accommodation after December 2015, (2) failing to uniformly provide him reasonable accommodations for his medical examinations at the UCSD School of Medicine, and (3) failing to provide him reasonable accommodations to extend his time to complete his M.D. graduation requirements, or in the alternative, graduated him from the UCSD School of Medicine without passing his last requirement of the Step 2 examination.[1]

Complaint ¶ 83.

---

[1] To the extent Plaintiff's legal theory is that he did not receive proper accommodations, he was required to exhaust internal remedies regarding that accommodation.  Specifically, to appeal the Committee's decision to deny his fifth request for accommodations, Plaintiff was required to comport with University procedures and submit an appeal to the University's Educational Policy Committee within 30 days.  *See* RJN Exh. 2.  If this appeal was rejected, Plaintiff was then required to submit a written appeal to the University's Senior Vice Chancellor of Academic Affairs within 30 days of that decision.  *Id.*  Plaintiff does not allege he submitted an appeal to the University's Educational Policy Committee, or that he submitted an appeal to the University's Senior Vice Chancellor of the Academic Affairs Office.

1  Plaintiff makes this allegation despite the fact that the Committee provided

2  him with four accommodations for his disability in response to his requests,

3  including three extensions to his graduation deadline, and test-taking

4  accommodations for all his University medical exams.  Complaint ¶¶ 43, 44, 53, 59,

5  67.  Further, the University supported his attempt to receive accommodations from

6  the NBME by providing a written letter regarding the accommodations the

7  University was already providing to Plaintiff.  Complaint ¶ 63.

### III.

### STANDARDS ON A MOTION TO DISMISS

10  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to

11  dismiss where the complaint shows the court lacks jurisdiction over the subject

12  matter of the claim.  A 12(b)(1) motion is also an appropriate vehicle for dismissal

13  when a plaintiff's claims are barred by Eleventh Amendment sovereign immunity.

14  *Mueller v. U.S.-Corp.* 2009 WL 273283 (C.D. Cal., Feb. 2, 2009, EDVC08-00918-

15  DSFMAN); *see also Silvey v. City of Sparks*, 216 Fed.Appx. 686, 688 (9th Cir.

16  2007) (dismissal under 12(b)(1) is proper where defendant had sovereign

17  immunity).

18  To the extent the court has jurisdiction over a claim, Rule 12(b)(6) permits a

19  motion to dismiss where the complaint "fail[s] to state a claim upon which relief can

20  be granted."  Fed. R. Civ. Proc. 12(b)(6).  A court may dismiss a complaint as a

21  matter of law either for lack of a cognizable legal theory or for the absence of

22  sufficient facts under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds,*

23  *Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

24  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

25  need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of

26  his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

27  recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v.*

28  *Twombly*, 550 U.S. 544, 555 (2007).  The burden is squarely on the plaintiff to show

factual allegations amounting to more than a speculative basis for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).  Lastly, the court may dismiss an action with prejudice where, as here, there is a reasonable certainty the plaintiff would not be entitled to relief under any set of provable facts. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 293 (9th Cir. 1990).

## IV.

## LEGAL ARGUMENT

### A.   Plaintiff Cannot Move Forward With His Claims Because He Did Not Exhaust His Administrative or Judicial Remedies

To bring his claims in federal court, Plaintiff must exhaust his administrative remedies with the University *and* succeed on a writ of mandamus in state court to challenge the administrative decision.  Plaintiff has completed neither of these jurisdictional requirements, and he therefore is barred from seeking judicial relief.

### 1.   Plaintiff's Claims are Barred Because He Has Not Exhausted His Administrative Remedies

A California litigant bringing a state law claim must exhaust all available administrative remedies before resorting to the courts for relief. *Abelleira v. District Court of Appeal*, 17 Cal.2d 280, 292 (1941); *Gutierrez v. RWD Technologies, Inc.*, 279 F. Supp. 2d 1223, 1225 (E.D. Cal. 2003).  This exhaustion requirement is a condition of jurisdiction and is thus a necessary prerequisite to obtaining any judicial relief. *Yamaha Motor Corp. v. Superior Court*, 185 Cal.App.3d 1232, 1240 (1986); *Morton v. Superior Court*, 9 Cal. App. 3d 977, 981 (1970) ("[I]t is settled that the exhaustion of an administrative remedy, where one is available, is a condition precedent to obtaining judicial relief, and that a 'court violating the rule acts in excess of jurisdiction.'") (citations omitted).

Here, Plaintiff does not allege he appealed the Committee's decision to deny his fifth request for accommodations; he alleges only that he appealed his dismissal. Complaint ¶¶ 75, 81.  To comport with the University appellate process regarding

denial of accommodations, Plaintiff was required to submit an appeal to the University's Educational Policy Committee within 30 days and, if this appeal was rejected, to submit another appeal to the University's Senior Vice-Chancellor of Academic Affairs. *See* Request for Judicial Notice ("RJN") Exh. 2. However, Plaintiff does not allege he submitted an appeal of his accommodation denial, or any appeal to the Educational Policy Committee whatsoever. Thus, Plaintiff cannot seek judicial relief based on his denial of accommodations.

### 2. Plaintiff's Claims are Barred Because He Has Not Overturned the University's Decision Through a Writ Of Mandate

In addition to the requirement that Plaintiff complete administrative remedies by obtaining a decision on the merits of his grievance, Plaintiff is also required to successfully exhaust his judicial remedies. Courts have repeatedly found that a plaintiff like Doe, who received an adverse administrative ruling, cannot bring civil claims regarding that ruling without first overturning the agency's decision through a successful writ of mandamus. *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147 (9th Cir. 2018) (remand with instructions to grant the University's motion to dismiss Section 1983 claim, among others, because suspended student did not challenge suspension through writ); *Edgren v. Regents of the Univ. of Cal.*, 158 Cal.App.3d 516 (1984) (demurrer against discharged University employee sustained because of failure to file writ); *Takahashi v. Bd. of Educ.*, 202 Cal.App.3d 1464 (1988) (summary judgment affirmed because discharged teacher did not prevail on prior writ). Only after *prevailing on a writ of mandate* may a plaintiff bring civil claims regarding an administrative process or decision. *Mata v. City of Los Angeles*, 20 Cal.App.4th 141 (1993) (court allowed discharged police officer to bring Section 1983 claim against the City of Los Angeles because he already prevailed on a writ of mandate regarding his discharge).

The same is true here. The California Constitution grants The Regents quasi-adjudicatory powers involving its students and employees. Thus, it operates as an

1   administrative agency when it decides, for example, whether to grant a professor

2   tenure or to award a student a degree.  *See Mendoza v. Regents of Univ. of Cal.*, 78

3   Cal.App.3d 168, 177 (1978); see also *Ass'n of Christian Sch. Int'l v. Stearns,* 362 F.

4   App'x 640, 643 (9th Cir. 2010); *Paulsen v. Golden Gate Univ.,* 25 Cal.3d 803, 808

5   (1979) (noting a "widely accepted rule of judicial nonintervention into the academic

6   affairs of schools.") (citations omitted); *see also Pomona Coll. v. Superior Ct.,* 45

7   Cal. App. 4th 1716, 1725 (1996)  ("Wherever the responsibility lies within the

8   institution, it is clear that courts must be vigilant not to intrude into that

9   determination, and should not substitute their judgment for that of the college.").

10   Each of these administrative decisions is effectively a decision of the State of

11   California itself because the University is an arm or branch of the state government.

12   *Ishimatsu v. Regents of Univ. of Cal.*, 266 Cal.App.2d 854, 864 (1968) (The

13   University "constitutes a branch of the state government equal and coordinate with

14   the legislature, the judiciary and the executive…the power of the Regents to operate,

15   control and administer the university is virtually exclusive.") (citations and

16   quotations omitted).  Principles of comity and federalism therefore require that all

17   courts, state and federal, treat the University's administrative decisions as decisions

18   of the state itself.  *See Clemes v. Del Norte Cty. Unified Sch. Dist.*, 843 F. Supp.

19   583, 596 (N.D. Cal. 1994) ("Considerations of federalism and comity…loom large

20   in the case of state mandamus proceedings.").  The California Legislature has

21   provided the vehicle to challenge these administrative decisions of the state: a writ

22   of mandate under the California Code of Civil Procedure.

23   Plaintiff does not allege that he filed a writ of mandate regarding the

24   University's administrative decision to dismiss him and/or as to the appeal of that

25   dismissal, let alone that he prevailed on such a writ, as required.  He is therefore

26   barred from moving forward on any civil claims regarding the Committee's decision

27   or his ultimate dismissal.  *Edgren*, 158 Cal.App.3d at 523; *Takahashi*, 202

28   Cal.App.3d at 1486.

**B.**    **Eleventh Amendment Immunity Bars Plaintiff's First, Third, and Fourth Claims**

Plaintiff's first claim for relief under Title II of the Americans with Disabilities Act ("ADA"), third claim for relief under the Unruh Act, and fourth claim for relief under California Government Code section 11135 ("Section 11135") are all barred by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment prohibits suits against a state and its agencies for legal or equitable relief. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Federal Maritime Comm'n v. South Carolina State Ports Authority*, 535 U.S. 743, 760 (2002); *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988) ("Under the eleventh amendment, agencies of the state are immune from private damages actions or suits for injunctive relief brought in federal court."). This jurisdictional bar applies regardless of the nature of relief sought, and covers suits against state agencies, arms of the state, and state departments. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984); *Brooks v. Sulphur Springs Valley Elec. Co-Op*, 951 F.2d 1050, 1053 (9th Cir. 1991); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995).

The University of California system is created under Article IX, section 9 of the California Constitution, and its government is entrusted to The Regents. It has long been recognized that The Regents qualifies as a state agency that is entitled to Eleventh Amendment immunity. *Jackson v. Hayakawa*, 682 F.2d, 1344, 1350 (9th Cir. 1982) ("the University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment"); *Mitchell*, *supra*, 861 F.2d at 201 ("California cases demonstrate that California state colleges and universities are dependent instrumentalities of the state" and therefore protected by the Eleventh Amendment). Therefore, a suit against The Regents is, in reality, a suit against the state itself. *Hafer v. Melo*, 502 U.S. 21 (1991); *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982).

1.    **Plaintiff's First Claim For Violation Of Title II Of The ADA Is Barred By Sovereign Immunity**

Plaintiff's first claim is for disability discrimination under Title II of the ADA, 42 U.S.C. § 12132 *et seq*., which prohibits disability discrimination in the provision of public services.  Specifically, Plaintiff claims The Regents violated the ADA by "failing to provide a full, equal and meaningful educational program." Complaint ¶ 94.

The U.S. Supreme Court discussed sovereign immunity in the context of Title II of the ADA in *Tennessee v. Lane*, 541 U.S. 509 (2004).  In *Lane*, the Supreme Court recognized a narrow exception to Eleventh Amendment immunity in Title II cases involving fundamental, constitutionally-guaranteed rights such as physical access to the court.  *Id*. at 530-532.  The Supreme Court also determined that application of Eleventh Amendment immunity in Title II cases must be a case-by-case inquiry.  *Id*. at 530-531.  In *United States v. Georgia*, 546 U.S. 151 (2006), the Court held that to determine if sovereign immunity applies, a court must examine (1) whether the conduct violated Title II; (2) whether the conduct violated a fundamental Fourteenth Amendment right; and (3) for cases like Plaintiff's, when conduct is alleged to violate Title II but not a fundamental constitutional right, whether Congress has the power to abrogate sovereign immunity.  *Id*. at 519.  Conduct that violates Title II, but not a fundamental right, is considered "irrational discrimination."  *Lane*, 541 U.S. at 533, n.20; *Klingler v. Director, Dept. of Revenue, State of Mo.*, 455 F.3d 888, 896 (8th Cir. 2006).

The Ninth Circuit has provided no clear guidance on whether Title II abrogates sovereign immunity in "irrational discrimination" cases.  *Phiffer v. Columbia River Correctional Institute*, 384 F.3d 791 (2004), is sometimes cited in this Circuit for the proposition that Eleventh Amendment immunity is abrogated under Title II of the ADA.  *Id*. at 792.  However, under the Supreme Court's directive in *Lane*, application of Eleventh Amendment immunity to Title II claims

must be determined on a factual basis.  Additionally, the Court's later direction in *United States v. Georgia* (post-dating *Phiffer*) on how to make such a case-by-case determination shows that *Phiffer* is only applicable to the specific issue presented in that case.

Further, *Phiffer* is quite distinct from the facts of the present case.  In *Phiffer*, the alleged violation of Title II involved the prison inmate's right to choose a mandatory health program that affected his disability, which the Ninth Circuit found to be a "fundamental" right protected by the Fourteenth Amendment.  See *Phiffer,* 384 F.3d at 792; for the facts of *Phiffer*, see also, *Phiffer v. Dep't of Corr. Columbia River Corr. Inst.*, No. CV 00-1652-BR, 2001 WL 1842049, at *1 (D. Or. Sept. 17, 2001), aff'd and remanded sub nom. *Phiffer v. Columbia River Corr. Inst.*, 63 F. App'x 335 (9th Cir. 2003)..  In short, *Phiffer* only applied to cases (under the *United States v. Georgia* analysis) where the alleged violation of Title II trammeled a "fundamental" right.  In fact, in concurrence Justice O'Scannlain warned against treating *Phiffer* as a general rule against sovereign immunity:  "It is, therefore, open to question whether Title II validly abrogates state sovereign immunity where no fundamental right is at issue.  A state may well retain its Eleventh Amendment immunity where a plaintiff premises a Title II claim solely upon an alleged equal protection violation and has not suffered the deprivation of any other constitutional right."  *Phiffer,* 384 F.3d at 793.  Defendant is unaware of any Ninth Circuit case that has answered the question of whether sovereign immunity would be abrogated in an "irrational discrimination" case.

In the absence of a rule controlling this case, this Court can look to other Circuits interpreting whether Title II abrogates sovereign immunity in "irrational discrimination" cases.  The Eighth Circuit has held that sovereign immunity is only abrogated in cases involving fundamental constitutional rights, and not irrational discrimination.  *Klingler v. Director, Dept. of Revenue, State of Mo*., 455 F.3d at 893-894 (holding that requirement to pay for a disabled parking placard did not

require abrogation of sovereign immunity because it was merely irrational discrimination and did not affect a fundamental right).

Indeed, the Tenth Circuit has noted that "there is a trend of courts holding that, absent the need to vindicate a fundamental right or protect a suspect class, Congress may not abrogate state sovereign immunity" in Title II cases. *Guttman v. Khalsa*, 669 F.3d 1101, 1122-23 (10th Cir. 2012). The court then found that the right at interest, regulation of professional licensing, "did not implicate a traditional category of fundamental rights." *Id.* at 1123. As a result, the court held that Title II did not validly abrogate the state's sovereign immunity in that case. *Id*. at 1124-1125; *Toeller v. Wisconsin Dep't of Corr.*, 461 F.3d 871, 876-880 (7th Cir. 2006) (holding that Congress did not abrogate sovereign immunity because the "self-care" leave provision at question, unlike other provisions of the Family and Medical Leave Act, was not adopted to combat sex discrimination or protect some other fundamental right).

Here, Plaintiff's claim does not touch on any fundamental guaranteed constitutional right. Rather, he alleges he was prevented from receiving a medical degree. Complaint ¶¶ 5-8, 20. There is no fundamental constitutional right to receive a medical degree. Thus, his claim is for irrational discrimination that does not fit into the narrow subset of cases carved out by the Supreme Court regarding fundamental rights. As a result, his first claim for violation of Title II of the ADA is barred by sovereign immunity.

### 2. The Regents Is Also Immune From Plaintiff's Pendent State Claims

Plaintiff's pendent state law claims are also barred by sovereign immunity. In general, the Eleventh Amendment "precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts." *See Pennhurts State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Aygor v. Regents of Univ. of Minn*, 534 U.S. 533, 540-41 (2002); *Cholla Ready Mix, Inc. v. Civish*, 382

F.3d 969, 973-74 (9th Cir. 2004).  The reason, as this Court itself has noted, is that "allowing a federal court to adjudicate state law claims as against the state itself 'conflicts directly with the principles of federalism that underlie the Eleventh Amendment.'"  *Akins v. San Diego Cmty. Coll. Dist.*, 2013 WL 40976, *3 (S.D. Cal. Jan. 2, 2013), quoting *Pennhurst State Sch. & Hosp*, *supra*, 465 U.S. at 106 ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"); see also, *Cholla Ready Mix, Inc.*, *supra*, 382 F.3d at 973.

Further, the Ninth Circuit has specifically held that sovereign immunity is not abrogated by the Unruh Act, and the state is immune from lawsuits brought under the Unruh Act.  *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006); *Myers v. California Dep't of Rehab.*, 2012 WL 3529784 (E.D. Cal. Aug. 14, 2012).

Likewise, the Ninth Circuit has held that sovereign immunity is not abrogated by California Government Code section 11135.  *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1114 (9th Cir. 1987) (dismissing Section 11135 claim due to sovereign immunity); *Myers*, *supra*, 2012 WL 3529784 (E.D. Cal. Aug. 14, 2012) (no evidence that "California made a 'clear declaration in the Unruh Act…or section 11135 of an intent to waive its sovereign immunity concerning any of these statutes); *T.M. ex rel. Benson v. San Francisco Unified Sch. Dist.*, 2010 WL 291828 (N.D. Cal. Jan 19, 2010) (dismissing Section 11135 claim due to sovereign immunity); *Wilson-Combs v. California Dep't of Consumer Affairs*, 2008 WL 227850 (E.D. Cal. Jan. 28, 2008) (same).

Accordingly, Plaintiff's pendent state law claims must be dismissed, as The Regents is immune from such claims under Eleventh Amendment sovereign immunity.

/ / /

/ / /

## C.     Plaintiff's Unruh Civil Rights Act Claim Also Fails Because The Regents Is Not A "Business Establishment" For Purposes Of The Unruh Act

Plaintiff brings his third claim of relief under the Unruh Act, which requires Plaintiff to prove that The Regents is a "business establishment" for purposes of the Unruh Act.  Cal. Civ. Code § 51.  However, not only is The Regents immune from this claim due to Eleventh Amendment sovereign immunity, it is also not a "business establishment" under the Unruh Act and is thus not liable under its provisions.  *Brennon B. v. Superior Ct. of Contra Costa Cty.*, 57 Cal.App.5th 367, 397 (2020), aff'd sub nom, *Brennan B. v. Superior Court*, 13 Cal.5th 662, reh'g denied (Aug. 31, 2022) (public school districts are not "business establishments" under the Unruh Act); see also *Mathis v. Pacific Gas and Elec. Co.*, 75 F.3d 498, 505 (9th Cir. 1996) (Unruh Act claim fails because nuclear power plant is not a "business establishment generally open to the public"); *Hart v. Cult Awareness Network*, 13 Cal. App. 4th 777, 788-89 (1993) (group that educates the public about cults is not a "business"; membership was "largely discretionary, highly restricted and selective").

The Unruh Act prohibits discrimination by "business establishments."  Cal. Civ. Code § 51(a).  Although the term "business" is "not necessarily limited to activities engaged in for profit..., it is nevertheless confined to activities engaged in by private entities, unless a contrary intent is apparent from the statutory language."  *Sacramento Mun. Util Dist. v. County of Solano*, 54 Cal.App.4th 1163, 1169 (1977).

The Unruh Act makes no mention of application to public entities, and does nothing to rebut the presumption that it is inapplicable to public entities.  Indeed, the California Court of Appeal has specifically found that "there is nothing in the legislative history of the Unruh Act, itself, that suggests the Act was intended to reach discriminatory conduct by state agents, such as public school districts and, again, there is much to indicate otherwise."  *Brennon B.*, 57 Cal.App.5th at 379. Further, courts have routinely suggested the Unruh Act was only intended to cover

private business establishments.  *Isbister v. Boys' Club of Santa Cruz*, 40 Cal.3d 72, 75 (1985) ("The Act is this state's bulwark against arbitrary discrimination in places of public accommodation.  Absent the principle it codifies, thousands of facilities in private ownership, but otherwise open to the public, would be free under state law to exclude people for invidious reasons like sex, religion, age, and even race"); *Burks v. Poppy Construction Co.*, 57 Cal.2d 463, 471 (1962) (discussing the Unruh Act and noting the Legislature may prohibit "private persons or organizations" from discrimination).

What's more, various Courts of Appeal have held that Unruh Act claims against specific public entities failed, concluding those particular public entities were not business establishments within the meaning of the Unruh Act.  *Spanish Speaking Citizens' Found. v. Low*, 85 Cal.App.4th 1179, 1240 (2000) (holding that "the Department [of Insurance] is not a 'business establishment' within the meaning of the Unruh Civil Rights Act"); *Burnett v. San Francisco Police Dep't*, 35 Cal.App.4th 1177, 1191-92 (1995) (Unruh Act cannot be used to state a claim against "legislative bodies"); *Buhi v. Hannigan*, 16 Cal.App.4th 1612, 1623-24 (1993) (Unruh Act does not apply to a suit against the DMV and law enforcement agencies challenging the enforcement of a motorcycle helmet law).

Thus, because the Unruh Act is inapplicable to public entities, and because The Regents is not a "business establishment" under the Unruh Act, Plaintiff's third claim against The Regents fails as a matter of law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**D.      The Court Should Not Grant Leave to Amend Because a Writ of Mandamus is Outside of its Subject Matter Jurisdiction**

Plaintiff may seek to amend to file a writ of mandate in this Court in an attempt to move forward with his civil claims against The Regents.  A writ of mandate under the California Code of Civil Procedure, however, is outside of this Court's subject matter jurisdiction, and federal courts very rarely hear writs under their supplemental jurisdiction because they are creations of state law, and are therefore better suited to state courts.  *Clemes*, 843 F. Supp. at 596 (granting the defendant's motion to dismiss plaintiff's motion for writ of mandamus because the court declined to hear writ under its supplemental jurisdiction); *Doe*, 891 F.3d at 1155 (holding that "the Eleventh Amendment bars Doe from filing his writ petition in federal court."); *Fresno v. Unified Sch. Dist. v. K.U. ex. rel. A.D.U.*, 980 F. Supp. 2d 1160, 1184 (E.D. Cal. 2013) (court refused to hear California mandamus action under its supplemental jurisdiction because "mandamus proceedings are uniquely in the interest and domain of the state courts.") (quotations and citations omitted).  As further explained in *Clemes*:

> Mandamus proceedings to compel a state administrative agency to act are actions that are uniquely in the interest and domain of state courts. It would be entirely inappropriate for a federal court, through exercise of its supplemental jurisdiction, to impose itself upon such proceedings. Considerations of federalism and comity, not generally present with typical "pendent" state claims, loom large in the case of state mandamus proceedings.

843 F. Supp. at 596.  The University, its administrative decision, and the writ process all present unique and nuanced issues of California law, and therefore should be decided by a California court before Plaintiff is allowed to proceed on any civil claims regarding his student discipline hearing, or his ultimate dismissal.

/ / /

/ / /

# V.

## CONCLUSION

Defendant The Regents of the University of California requests that its Motion to Dismiss be granted in its entirety for the foregoing reasons.

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

Dated:  November 23, 2022          By:  _____/s/ *Sandra L. McDonough*_____
SANDRA L. McDONOUGH
Attorneys for REGENTS OF THE
UNIVERSITY OF CALIFORNIA