ROSA HIRJI, ESQ. | SBN 204722
  *rosa@rkhlawoffice.com*
ALEX RODRIGUEZ | SBN 322700
  *alex@rkhlawoffice.com*
**LAW OFFICES OF HIRJI & CHAU, LLP**
5173 Overland Avenue
Culver City, CA  90230
Tel. (310) 391-0330 // Fax (310) 943-0311

*Attorneys for Plaintiff* JOHN DOE

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>v.<br><br>REGENTS OF THE<br>UNIVERSITY OF CALIFORNIA,<br>and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.: 22-CV-1506 JLS (WVG)<br>*Assigned for all purposes to the<br>Honorable Janis L. Sammartino*<br><br>**PLAINTIFF'S OPPOSITION TO<br>DEFENDANT REGENTS OF<br>THE UNIVERSITY OF<br>CALIFORNIA'S<br>MOTION TO DISMISS**<br><br>Hearing Date:    December 22, 2022<br>Hearing Time:    1:30 PM |

//
//
//
//
//
//
//

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................1

II.   RELEVENT FACTUAL ALLEGATIONS ......................................2

III.  LEGAL AUTHORITY........................................................................10

IV.   ARGUMENT .......................................................................................11

    A. Plaintiff Was Not Required to Exhaust Administrative
       Remedies, However, Plaintiff did
       Exhaust Administrative Remedies.....................................11

    B. Plaintiff Did Not Need To Exhaust State
       Judicial Remedies......................................................14

    C. Eleventh   Amendment   Does   Not   Bar
       Plaintiff's Claims For Relief Under Title II
       of the ADA and the Rehabilitation Act.............................18

    D. Plaintiff Should Be Given Leave to Amend.......................20

V.    CONCLUSION....................................................................................21

# TABLE OF AUTHORITIES

**CASES**                                                                  **Page No.**

*Ashcroft v. Iqbal*,

    556 U.S. 622 (2009) ...................................................................................10

*Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*,

    405 F.3d 954 (11th Cir. 2005) ...............................................................19, 20

*Barker v. Riverside County Office of Educ.*,

    584 F.3d 821 (9th Cir. 2009) ...................................................................10

*Bd. of Trustees of the Univ. of Ala. V. Garrett*,

    531 U.S. 356 (2001) ...................................................................................18

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544 (2007) ...................................................................................10

*Blue Cross of Calif., Inc. v. Sup. Ct.*,

    180 Cal.4th 1237 (2009) ............................................................................17

*Bowers v. Nat'l Collegiate Athletic Ass'n*,

    475 F.3d 524 (3rd Cir. 2007) ...................................................................19

*Brown v. Stored Value Cards, Inc.*,

    953 F.3d 567 (9th Cir. 2020) ...................................................................20

*Campbell v. Regents of Univ. of Calif.*,

    35 Cal.4th 311 (2005) ................................................................................12

*Carvalho v. Equifax Information Services, LLC*,

    629 F.3d 876 (9th Cir. 2010) ...................................................................20

*Cato v. United States*,

    70 F.3d 1103 (9th Cir. 1995) ...................................................................18

*Clews Land & Livestock, LLC v. City of San Diego*,

    19 Cal.5th 161 (2017) ................................................................................12

*Constantine v. Rectors & Visitors of George Mason Univ.*,

    411 F.3d 474 (4th Cir. 2005) ...................................................................19

*DeCotiis v. Whittemore,*
      842 F.Sup.2d 354 (D. Me. 2012) ..................................................................20

*Do v. Arizona State University,*
      No. CV-22-00190-PHX-JJT, 2022 WL 4235599
      (D. Ariz. Sept. 14, 2022) .............................................................................19

*Doe v. Regents of the Unvi. of Cal.,*
      891 F.3d 1147 (9th Cir. 2018) .....................................................................16

*Edgren v. Regents of the Univ. of Cal.,*
      158 Cal.App.3d 516 (1984) .........................................................................16

*Eminence Capital, LLC v. Aspeon, Inc.,*
      316 F.3d 1048 (9th Cir. 2003) .....................................................................11

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary,*
      454 U.S. 100 (1981) ....................................................................................14

*Felder v. Casey,*
      487 U.S. 131 (1988) .........................................................................11, 14, 15

*Gupta v. Stanford Univ.,*
      124 Cal. App. 4th 407 (2004) ......................................................................15

*Jonathan Neil & Assocs., Inc. v. Jones,*
      33 Cal.4th 917 (2004) ..................................................................................17

*Love v. U.S.,*
      915 F. 2d 1242 (9th Cir. 1988) ....................................................................10

*Mata v. City of Los Angeles,*
      20 Cal.App.4th 141 (1993) ..........................................................................16

*McDaniel v. Board of Ed. of Mountain View Sch. Dist.,*
      44 Cal.4th 1618 (1996) ..........................................................................11, 14

*McGary v. City of Portland,*
      386 F.3d 1259 (9th Cir. 2004) .....................................................................11

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

*Medical Staff of Sharp Mem. Hosp. v. Sup. Ct.*,

    121 Cal.4th 173 (2004) ...................................................................17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

    521 F.3d 1097 (9th Cir. 2008) .........................................................10

*Misischia v. Pirie*,

    60 F.3d 626 (9th Cir.1995) ........................................................14, 15

*Missouri ex rel. Koster v. Harris*,

    847 F3d 646 (9th Cir. 2017) ............................................................20

*Monroe v. Pape*,

    365 U.S. 167 (1961) ........................................................................14

*Oakland Raiders v. National Football League*,

    93 Cal.4th 572 (2001) .....................................................................17

*Patsy v. Bd of Regents of Fla*,

    457 U.S. 516 (1982) ..................................................................14, 15

*Phiffer v. Columbia River Correctional Institute*,

    384 F.3d 791 (2004) ........................................................................15

*Pomona Coll. v. Superior Court*,

    45 Cal. App. 4th 1716 (1996) ....................................................14, 16

*Richardson v. U.S.*,

    193 F.3d 545 (D.C. Cir. 1999) ........................................................10

*Sonoma County Ass'n of Retired Employees v. Sonoma County*,

    708 F.3d 1109 (9th Cir. 2013) .........................................................20

*Sustainability, Parks, Recycling & Wildlife Defense Fund v.*
*Department of Resources Recycling & Recovery*,

    34 Cal.5th 676 (2019) .....................................................................12

*Takahashi v. Bd. of Educ.*,

    202 Cal.App.3d 1464 (1988) ...........................................................16

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

*Tennessee v. Lane*,

    541 U.S. 509 (2004) ...........................................................................18, 19

*Toledo v. Sanchez*,

    454 F.3d 24 (1st Cir. 2006) ......................................................................19

*United States v. City of Redwood City*,

    640 F.2d 963 (9th Cir. 1981) ...................................................................10

*United States v. Georgia*,

    546 U.S. 151 (2006) .................................................................................18

*United States v. Utah Construction & Mining Co.*,

    384 U.S. 394 (1966) .................................................................................14

*Yagub v. Salinas Valley Mem. Healthcare System*,

    122 Cal.4th 474 (2004) ............................................................................17

**STATUTES**

California Government Code § 11135....................................................................2, 11

California Code of Civil Procedure § 1094.5...............................................16, 17, 18

**RULES**

Federal Rules of Civil Procedure, Rule 12(b)(6) ....................................................10

Federal Rules of Civil Procedure, Rule 15(a)(2) ....................................................20

# I.   INTRODUCTION

This is a disability discrimination case. Plaintiff JOHN DOE attended the University of California San Diego ("UCSD") School of Medicine. For his first two years, Plaintiff proceeded through his medical program at a normal schedule and was in good academic standing. However, on May 16, 2015, a drunk driver crashed into a vehicle that contained Plaintiff, along with other classmates. Two students died in this tragic accident. Plaintiff suffered a fractured sternum, and a traumatic brain injury with loss of consciousness. He was subsequently diagnosed with a Specific Learning Disability, Post-Traumatic Stress Disorder, Post-Concussion Syndrome, and Specific Memory Difficulty. This accident derailed Plaintiff's life, and the pace upon which he could complete his M.D. graduation requirements.

Despite his challenges, by September 1, 2020, Plaintiff had completed all of Defendant's graduation requirements with the exception of one medical licensing exam, the Step 2 examination, administered by the National Board of Medical Examiners ("NBME"). Before September 1, 2020, Plaintiff requested extra time to compete this graduation requirements in accordance with his academic accommodations the Defendant had been previously afforded to Plaintiff on February 1, 2018. However, Defendant refused to allow him extra time to take and pass the Step 2 examination, and on September 1, 2020, Defendant summarily dismissed Plaintiff from the UCSD School of Medicine, effectively ending his medical career.

Before bringing this action for disability discrimination, Plaintiff fully exhausted required administrative remedies. Furthermore, Plaintiff was not required to exhaust his judicial remedies prior to seeking equitable relief and monetary damages for alleged discriminatory acts under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehabilitation Act"). Plaintiff seeks leave to dismiss without prejudice his State

PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

1   law claims under the Unruh Civil Rights Act, and California Government Code

2   §11135.

3   **II.      RELEVANT FACTUAL ALLEGATIONS**

4       Between September 2012 and September 2020, Plaintiff was enrolled at UCSD

5   School of Medicine. ¶ 26. As part of becoming a licensed medical practitioner in

6   the United States, one must pass the United States Medical Licensing Examination

7   ("USMLE"), which consist of three Step examinations administered by the NBME,

8   and that the total number attempts allowed per Step examination is four (4). See

9   Exhibit A. California has a ten-year time limit for completing the three Step

10  examinations, which starts on the day one passes their first Step examination. *Id*.

11  Defendant does not contest that the UCSD School of Medicine had a more

12  stringent internal policy which required medical students to complete their M.D.

13  graduation requirements, including passing the Step 1 and Step 2 examinations,

14  within *six-years*.

15      Between June 14, 2014 and Summer 2015, Plaintiff took a leave of absence to

16  complete research associated with his Master's in Science at Johns Hopkins

17  University, which resulted in a poster and paper being published. ¶28. This was his

18  1st leave of absence, and unrelated to his subsequent disability. ¶28.

19      Prior to May 2015, Plaintiff had an exemplary academic record, excelling in his

20  undergraduate program, multiple Masters' programs, and two years of medical

21  school at UCSD School of Medicine in good academic standing. ¶14 & 27.

22      On May 16, 2015, Plaintiff, along with other students from UCSD medical

23  school, were involved in a fatal motor vehicle accident when a drunk driver

24  crashed into their vehicle. ¶29.  He was subsequently diagnosed with a specific

25  learning disability with impairment in reading fluency and rate, specific memory

26  difficulty with free auditory recall only, and post-traumatic stress disorder. ¶15.

27  His condition substantially limits his life activities, including his ability to take

28  test, learn, read, maintain concentration, and attend school. ¶16. This accident

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF**
**CALIFORNIA'S MOTION TO DISMISS**

changed Plaintiff's life, and the pace upon which he could complete his M.D. graduation requirements due to newly diagnosed disabilities. ¶29. Defendants were well aware of the highly publicized traumatic accident because it involved its students. ¶30. After the May 16, 2015 accident, Plaintiff never returned to a full course load. ¶¶31-32.

On August 13, 2015, Plaintiff failed the USMLE Step 1 examination on his 1st attempt, which as a result, the UCSD School of Medicine placed him on academic probation. ¶33.

On December 10, 2015, Plaintiff obtained a private neuropsychological evaluation from Dr. Sarah A. Bohn, who diagnosed him with a specific learning disability with impairment in reading fluency and rate, post-traumatic stress disorder, post-concussion syndrome, and specific memory difficulty with free auditory recall only. ¶35. By virtue of his disabilities, Plaintiff required and continues to require accommodations, related aids and services at school. Those accommodations include, but are not limited to, time and half on examinations, including STEP examinations; extended time to complete his M.D. graduation requirements, including STEP examinations; testing in a quiet room; and the ability read text out loud to himself. ¶20.

On or around December 2015, Plaintiff provided a copy of the December 10, 2015 Neuropsychological Evaluation to the UCSD School of Medicine, and its employees, thus providing Defendants notice of his injuries, disabilities, and need for accommodations. ¶36.

On or around December 2015 and January 2016, Plaintiff had two in-person meeting with Defendant's employees, Dean Carolyn and Dean Jess Mandel, who both discouraged Plaintiff from applying to the NBME for accommodations. ¶¶37-38. The meetings with Dean Kelly and Dean Mandel deterred Plaintiff from seeking accommodations from the NBME, and/or accommodations from the UCSD School of Medicine. ¶39.

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

On or around January 3, 2016 until the Spring 2016 quarter, Plaintiff took a 2nd leave of absences from full-time curriculum due to his disability related needs. ¶40. During this time, Plaintiff was actively seeking mental health treatment to treat his newly diagnosed disabilities. ¶40.

On May 12, 2016, Plaintiff, on his 2nd attempt, failed the USMLE Step 1 examination without the support of accommodations, which resulted in the UCSD School of Medicine placing him on academic probation subject to dismissal for experiencing continued academic difficulty while on academic probation. ¶41.

On August 26, 2016, Plaintiff petitioned the UCSD Standing and Promotions Committee ("SPC") to extend the six (6) year graduation policy as an accommodation for his disabilities. ¶43. On August 31, 2016, the SPC decided to not to hold a Review Hearing, and instead, after an informal meeting with Plaintiff, it agreed to make an exception the UCSD School of Medicine's six-year policy on the time limit for completion of the M.D. requirements. ¶44.

On September 1, 2016, the SPC informed Plaintiff that they were aware he failed the USMLE Step 1 examination on his second attempt. ¶45. In addition, the SPC informed him that his requested accommodation to extend the six-year graduation policy would be granted, and he would be provided seven years to complete his M.D. graduation requirements by June 2019. ¶45.

Between September 18, 2016 and Summer 2017 quarter, Plaintiff took a 3rd leave of absence, again due to his disability related needs. ¶46. During this time, Plaintiff was working with his therapist and attending outpatient programs as part of his newly diagnosed disabilities. ¶46.

On November 7, 2016, the SPC held an informal meeting with Plaintiff to discuss his plans to retake the Step 1, and complete his M.D. graduation requirements within 7 years. ¶47. During the meeting, Plaintiff informed the SPC that he was actively working to treat his mental health and disabilities. ¶47. At no point during this meeting, did the SPC inform Plaintiff that he could request

accommodations from the UCSD School of Medicine and/or the NBME to help complete his M.D. graduation requirements. ¶47.

Between March 27, 2018 to Summer 2018, Plaintiff took a 4th leave of absences, again due to his disability related needs. ¶50. During this time, Plaintiff worked with his mental health providers to treat his disabilities. ¶50.

On August 12, 2017, Plaintiff *passed* the USMLE Step 1 examination on his 3rd attempt. ¶51. On September 13, 2017, the SPC reviewed Plaintiff's probation status, however, it unilaterally decided that he would remain on academic probation until further notice. ¶52.

On February 1, 2018, the UCSD Office for Students with Disabilities ("OSD") provided Plaintiff the following accommodations: (1) "Extended test time (1.5 times the standard amount of time...); (2) Separate, quiet, distraction-reduced testing; and (3) "Extended time to complete program requirements and graduation requirements (petition required-student to complete all standard processes to obtain time limit extensions)." This was the first time that the UCSD School of Medicine provided him accommodations. ¶53.

On May 15, 2018, the SPC held a meeting to discuss Plaintiff's academic standing. ¶55. During this meeting, Plaintiff informed the SPC that he was working with his mental health providers to develop study strategies and test-taking strategies to improve his ability to timely complete his M.D. graduation requirements. ¶55. In addition, Plaintiff informed SPC that for many of his medical examinations he was not readily provided his testing accommodations unless he specifically requested them from his instructors, which made him feel that there was not an open dialog between him and UCSD School of Medicine. ¶55.

On March 29, 2019, Plaintiff, on his first attempt, failed the USMLE Step 2 examination. ¶57.

On April 22, 2019, Plaintiff petitioned to the SPC requesting an accommodation in the form of an additional year extension to the seven-year limit to complete the

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

1   M.D. graduation requirements. ¶58. On April 29, 2019, the SPC granted his

2   extension to complete the M.D. graduation requirements by May 30, 2020,

3   providing him eight years to complete his M.D. graduation requirements. ¶59.

4       On May 14, 2019, Plaintiff obtained a second private neuropsychological

5   evaluation from Dr. Bohn for purposes of re-evaluation, which Dr. Bohn diagnosed

6   him with a specific learning disability, with impairment in reading fluency and

7   rate, post-traumatic stress disorder, and cyclothymia. ¶60.

8       On December 17, 2019, Plaintiff notified the NBME of his disabilities and

9   requested reasonable accommodations in the form of additional time to take the

10   USMLE Step 2 examination. ¶61. On or about December 18, 2019, Jennifer

11   Cohen, NBME Disabilities Services Specialist, notified him that his reasonable

12   accommodation request was incomplete and requested additional information,

13   which Plaintiff immediately submitted. ¶62. On January 23, 2020, Susan Kelly,

14   Senior Disability Specialist at UCSD School of Medicine, provided a letter to the

15   NBME documenting that UCSD was providing Plaintiff with academic

16   accommodations and the reasons therein. ¶63. On March 26, 2020, Plaintiff

17   received a letter from the NBME Disability Services denying his request for

18   reasonable and appropriate accommodations. ¶64.

19       On April 17, 2020, Plaintiff petitioned to SPC a third extension to complete his

20   M.D. graduation requirements because of the COVID virus outbreak. ¶65. On

21   April 21, 2020, the UCSD School of Medicine sent out university wide email

22   regarding extended deadlines to pass Step examinations due to Covid for all UCSD

23   School of Medicine Students. ¶66. On May 4, 2020, the SPC, via email, extended

24   Plaintiff's deadline to complete the M.D. graduation requirements from June 30,

25   2020 to September 1, 2020. ¶67.

26       On July 15, 2020, Plaintiff took the Step 2 examination without the support of

27   accommodations because he did not have additional time to appeal the NBME's

28   denial of his request or to make a second request from the NBME given the

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

imposed September 1, 2020 deadline. ¶68. This was his 2nd attempt and he did not pass. ¶68.

On August 14, 2020, Plaintiff petitioned the SPC for additional time to graduate as a reasonable accommodation for his disability because his only remaining M.D. graduation requirement was to complete the Step 2 examination. ¶69. On August 27, 2020, the SPC at the UCSD sent a letter indicating that the deadline to complete his M.D. requirement was September 1, 2020. ¶70. On September 1, 2020, Defendants dismissed Plaintiff from the UCSD School of Medicine ***without a Review Meeting***. ¶71.

On October 6, 2020, psychologist Dr. Mara Lynn Katzman wrote a letter to the SPC requesting that Plaintiff be provide more time to take the Step 2 examination, which in her letter, Dr. Katzman informed the UCSD School of Medicine that she had been working with Plaintiff since January 12, 2016, and he continues to need accommodations due to his disability related needs. ¶72. On October 8, 2020, Clinical Professor Nancy Swerdlow Downs wrote a letter to the SPC requesting that Plaintiff be provided an additional year until June 2021 to pass the Step 2 examination, which in her letter, Dr. Swerdlow Downs informed the UCSD School of Medicine that she has been working with Plaintiff since January 14, 2016, and he continues to need accommodations due to his disability related needs. ¶73. On October 21, 2020, Dr. Bohn wrote a letter to the SPC requesting that Plaintiff be provided additional time to complete his medical requirement, and that be allowed a third opportunity to take the USMLE Step 2 examination. ¶74.

On October 31, 2020, Plaintiff submitted a timely appeal of his dismissal to Dr. Steven R. Garfin, Interim Dean of the UCSD School of Medicine, pursuant to the UCSD School of Medicine's Appeal policy, which included the letters from Dr. Katzman, Dr. Swerdlow Downs, and Dr. Bohn. ¶75. Plaintiff requested a reasonable accommodation to extend the time for him to complete his M.D. graduation requirements for an additional year to allow him to take his remaining

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

1  requirement of passing the Step 2 examination. ¶75.

2    On December 29, 2020, Dr. Garifn sent a letter notifying Plaintiff that his

3  appeal was denied, and concluded that "the SPC's decision was neither arbitrary

4  nor capricious". ¶76. See Exhibit B.

5    On June 3, 2021, the UCSD School of Medicine notified the NBME that

6  Plaintiff was no longer a medical school student. ¶77. And on June 3, 2021, the

7  NBME notified Plaintiff that he was no longer eligible to take the USMLE Step 2

8  examination because he was no longer enrolled at UCSD School of Medicine.

9  ¶¶78-79.

10    If Plaintiff had continued to be enrolled at UCSD School of Medicine or

11  graduated from UCSD School of Medicine, then he would otherwise have been

12  eligible to retake the Step 2 examination up to four times, and would have 10 years

13  from the date he passed his Step 1 examination on August 12, 2017 to pass the

14  Step 2 examination. ¶80; Exhibit A.

15    On July 12, 2022, Plaintiff submitted a letter to the UCSD School of Medicine

16  requesting that SPC overturn its decision to dismiss, which in response the UCSD

17  School of Medicine ***informed him that he had exhausted his administrative***

18  ***appeal rights***, and that they would not reconsider their prior decisions regarding

19  his enrollment. ¶¶81-82; Exhibit C.

20    After fully exhausting his administrative remedies, Plaintiff brought this action

21  alleging that Defendants unlawfully discriminated against him on the basis of his

22  disabilities pursuant to Title II of the ADA and the Rehabilitation Act by: (1)

23  failing to provide Plaintiff with reasonable accommodations that he required to

24  participate in its programs and discriminated against him when it dismissed him for

25  seeking those accommodations; (2) failing to make reasonable modifications to its

26  rules and/or policies by not allowing Plaintiff to have additional time to complete

27  his M.D. graduation requirements, which the only remaining requirement was

28  passing the Step 2 examination; (3) failing to make reasonable modifications to its

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF
CALIFORNIA'S MOTION TO DISMISS**

rules and/or policies regarding the timeline to complete the M.D. graduation requirements by not allowing Plaintiff to have four opportunities to take the Step 2 examination and 10 years to complete the Step examinations as allowed by the NBME; (4) failing to make reasonable modifications to its rules and/or policies regarding the requirement to its M.D. graduation requirement by not allowing Plaintiff to graduate from UCSD School of Medicine without passing the Step 2 examinations; (5) failing to timely engage in the interactive process to discuss reasonable accommodations in good faith after Plaintiff notified Defendants of his disability and need for accommodations on or around December 2015; (6) failing to engage in the interactive process to discuss reasonable accommodations in good faith after Plaintiff notified Defendants of his disability and need for accommodations for additional time to pass the Step 2 examination to complete his M.D. graduation requirements; and/or (7) requiring Plaintiff to abide by the UCSD School of Medicine's graduation requirement policy as a condition for graduating medical school, which had the effect of discriminating against Plaintiff on the basis of his disability, especially when Defendant knew that Plaintiff had taken one (1) non disability leave and three (3) disability leaves of absence which amounted to almost three (3) years of leave. ¶¶85-105, 106-128.

Defendant's graduation policy resulted in Plaintiff being dismissed from the M.D. program even though he had otherwise met all but one requirement for graduation, which was to pass the Step 2 examination. *Id.*

Plaintiff seeks monetary damages, and equitable relief via an injunction compelling Defendant to comply with the ADA/504 in providing reasonable modifications for Students who require additional time to complete the M.D. graduation requirements, and an injunction requiring Defendants to reinstate Plaintiff as an active student to allow him two more opportunities to take the Step 2 examination before June 2024, or in the alternative, allowing Plaintiff to graduate from UCSD School of Medicine without passing the Step 2 examinations.

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

## III.   LEGAL AUTHORITY

Where plaintiff has sufficiently pleaded jurisdiction, and defendants have presented no admissible evidence to challenge the court's ability to provide redress, a motion to dismiss for lack of subject matter jurisdiction should not be granted. *Love v. U.S.*, 915 F. 2d 1242, 1245 (9th Cir. 1988) ("Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); see also *Richardson v. U.S.*, 193 F.3d 545, 549 (D.C. Cir. 1999) ("To survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff is not required to plead facts sufficient to prove his allegations; rather a court should only dismiss a complaint for lack of subject matter jurisdiction if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

Similarly, in ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must take as true all non-conclusory factual allegations and draw all reasonable inferences in the light most favorable to the plaintiff. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). If plaintiff's claims allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" she survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either "a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). It is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). In addition, a Rule 12(b)(6) motions are "especially disfavored" where the complaint sets forth a novel legal theory "that can best be

1  assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259,

2  1270 (9th Cir. 2004). Absent prejudice to other parties, or a strong showing of

3  other factors, there is a presumption that leave to amend will be granted. *Eminence*

4  *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

5  **IV.   ARGUMENT**

6       Defendant's Motion in regard to Plaintiff's First Claim for Relief under Title II

7  of the ADA, and Second Claim for Relief under the Rehabilitation Act should be

8  overruled in their entirety for reasons below. Defendant does not challenge and

9  therefore concedes that Plaintiff has validly stated claims under Title II of the

10  ADA, and the Rehabilitation Act. However, upon reviewing Defendant's moving

11  papers, Plaintiff request the Court to dismiss without prejudice his Third Claim For

12  Relief under Unruh Civil Rights Act, and Fourth Claim for Relief under California

13  Government Code §11135.

14        **A. Plaintiff Was Not Required to Exhaust Administrative Remedies;**

15           **However, Plaintiff did Exhaust Administrative Remedies.**

16       Given that Plaintiff is only proceeding on his federal law claims under Title II

17  of the ADA and the Rehabilitation Act, then Plaintiff was not required to exhaust

18  his administrative remedies. A plaintiff is not required to exhaust state

19  administrative or judicial remedies before suing under federal civil rights statutes.

20  *Felder v. Casey*, 487 U.S. 131, 147 (1988); *McDaniel v. Board of Ed. of Mountain*

21  *View Sch. Dist.*, 44 Cal.4th 1618, 1622 (1996). The ADA and the Rehabilitation Act

22  do not contain administrative exhaustion provision, and thus in applying *Felder*,

23  this Court should not impose an administrative exhaustion requirement into a

24  federal civil rights scheme, which would significantly inhibit Plaintiff's ability to

25  bring federal actions in federal court.

26       None of the cases cited by Defendant involve cases where Plaintiff is bringing

27  *only federal law claims* for disability discrimination under the ADA and the

28  Rehabilitation Act. Defendant's citations have no controlling authority on this

1  Court, and only relate to "California litigant bringing a state law claim". See Def.

2  MTD, 11:14-25.

3      Nevertheless, in the event that administrative exhaustion was required, then

4  Plaintiff did exhaust administrative remedies with the UCSD School of Medicine.

5  For the Defendant to claim otherwise is a misrepresentation to this Court.

6  Accordingly, to satisfy the exhaustion requirement, a party must fully present its

7  arguments and evidence at the administrative hearing, and take advantage of every

8  stage of the administrative grievance process provided. *Clews Land & Livestock,*

9  *LLC v. City of San Diego*, 19 Cal.5th 161, 187, (2017); *Campbell v. Regents of*

10  *Univ. of Calif.*, 35 Cal.4th 311, 323 (2005); *Sustainability, Parks, Recycling &*

11  *Wildlife Defense Fund v. Department of Resources Recycling & Recovery*, 34

12  Cal.5th 676, 695, (2019) —"Before seeking judicial review a party must show that

13  he has made a full presentation to the administrative agency upon all issues of the

14  case and at all prescribed stages of the administrative proceedings" (internal quotes

15  and emphasis omitted).

16      Here, on August 14, 2020, Plaintiff petitioned the SPC for additional time to

17  graduate as a reasonable accommodation for his disability because his only

18  remaining M.D. graduation requirement was to complete the Step 2 examination.

19  ¶69. On August 27, 2020, the SPC at the UCSD sent a letter indicating that the

20  deadline to complete his M.D. requirement was September 1, 2020. ¶70. On

21  September 1, 2020, Defendants dismissed Plaintiff from the UCSD School of

22  Medicine ***without a Review Meeting***. ¶71. See Def. Exhibit 1. Thereafter, on

23  October 31, 2020, Plaintiff submitted a timely appeal of his dismissal to Dr. Steven

24  R. Garfin, Interim Dean of the UCSD School of Medicine, pursuant to the UCSD

25  School of Medicine's Appeal policy. ¶75. On December 29, 2020, Dr. Garifn sent

26  a letter notifying Plaintiff that his appeal was denied, thus exhausting his

27  administrative remedies pursuant to the Defendant's policies. See Exhibit B. In

28  addition, there is further evidence that Plaintiff exhausted his administrative

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

1   remedies because on July 12, 2022, Plaintiff submitted a letter to the UCSD School

2   of Medicine requesting that SPC overturn its decision to dismiss, which in

3   response the UCSD School of Medicine ***informed him that he had exhausted his***

4   ***administrative appeal rights***, and that they would not reconsider their prior

5   decisions regarding his enrollment. ¶¶81-82; Exhibit C.

6      Defendant further misleads this Court in alleging Plaintiff did not exhaust his

7   administrative remedies because Plaintiff "did not allege he appealed the

8   Committee's decision to deny his fifth request for accommodations." See Def.

9   MTD, ¶11:26 -12:7. Plaintiff did not need to appeal to the "University's

10  Educational Policy Committee" because this was not an issue of a 'disagreement to

11  the response for a request for accommodations...'. See Def. Exhibit 2. Instead, the

12  issue as framed in Plaintiff's Complaint, *inter alia*, is that Defendant discriminated

13  against Plaintiff by falling to provide him his accommodations when he requested

14  it on August 14, 2020. On February 1, 2018, the UCSD OSD provided Plaintiff

15  with an accommodation for "Extended time to complete program requirements and

16  graduation requirements (petition required-student to complete all standard

17  processes to obtain time limit extensions)." ¶53. The accommodation afforded to

18  Plaintiff is silent to the time period Plaintiff had to complete his graduation in

19  requirement, and thus Defendant discriminated against Plaintiff when it failed to

20  provide him additionally time to complete his last graduation requirement as he

21  requested on August 14, 2020. In short, there was nothing for Plaintiff to appeal to

22  the University's Educational Policy Committee because Plaintiff was already

23  awarded the accommodation of extended time to complete his graduation

24  requirements, which when reviewing the NBME standards Plaintiff should have

25  had four opportunities to take the Step 2 Examination, and/or 10 years to complete

26  his Step Examinations form the date he passed his First Step Examination on

27  August 12, 2017. ¶51; Exhibit A.

28     Lastly, if Plaintiff was required to submit an appeal to the University's

**PLAINTIFF'S OPPOSITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF
CALIFORNIA'S MOTION TO DISMISS**

1 Educational Policy Committee, then the Defendant should have informed him of

2 this required administrative appeal as part of its' December 29, 2020 letter that

3 formally upheld his dismissal. See Exhibit B. Defendant's claim that this was

4 required now is taken in bad faith because Defendant failed to provide Plaintiff

5 notice of this alleged procedural requirement at the time of its September 1, 2020

6 dismissal.

### B. Plaintiff Did Not Need To Exhaust State Judicial Remedies

8     Plaintiff was not required to exhaust state judicial remedies for his federal

9 claims under Title II of the ADA and the Rehabilitation Act.

10     A plaintiff is not required to exhaust state administrative or judicial remedies

11 before suing under federal civil rights statutes. *Felder v. Casey*, 487 U.S. 131, 147

12 (1988); *McDaniel v. Board of Ed. of Mountain View Sch. Dist.*, 44 Cal.4th 1618,

13 1622 (1996). Furthermore, in *Patsy v. Bd of Regents of Fla*, 457 U.S. 516 (1982),

14 the Supreme Court held that "exhaustion of state administrative remedies should

15 not be required as a prerequisite to bringing an action pursuant to §1983." *See*

16 *also Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 104

17 (1981) ("The federal remedy is supplementary to the state remedy, and the latter

18 need not be first sought and refused before the federal one is invoked")

19 (quoting *Monroe v. Pape,* 365 U.S. 167, 183 (1961)). However, unreviewed

20 administrative determinations, such as that of the Committee, will be given

21 preclusive effect only when the fairness requirements of *United States v. Utah*

22 *Construction & Mining Co.*, 384 U.S. 394 (1966) are met. *See Misischia v.*

23 *Pirie,* 60 F.3d 626, 629 (9th Cir.1995) (findings of administrative agencies must

24 satisfy both State requirements for preclusion and *Utah Construction* factors to

25 have preclusive effect in federal court).

26     Furthermore, the remedy of administrative mandamus "is available if a hearing

27 is required by statute, an organization's internal rules and regulations, or due

28 process." *Pomona Coll. v. Superior Court*, 45 Cal. App. 4th 1716, 1727 n.10

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

(1996); *See also Gupta v. Stanford Univ.*, 124 Cal. App. 4th 407, 411 (2004) (requiring plaintiff to file an administrative writ where "the gravamen of [the plaintiff's] claims [wa]s confined to the disciplinary process and the proceedings against him").

Here, in applying *Felder and Patsy*, this Court should find that Plaintiff did not need to exhaust state judicial remedies because the Title II of the ADA and the Rehabilitation Act do not require state judicial exhaustion before suing in federal court. For the Court to hold otherwise would significantly inhibit Plaintiff's ability from bringing federal claims in federal court, and fundamentally change the intent of Congress in enacting these federal claims.

Next, in applying *Utah Construction*, and *Misischia*, the fairness requirements are not met because there was no underlying "quasi-judicial decision". In addition, in applying *Gupta*, the gravamen of Plaintiff's Complaint is not confined to the disciplinary process and/or any proceedings against him. Instead, this is a case of disability discrimination. On February 1, 2018, Defendant provided Plaintiff with an accommodation for "Extended time to complete program requirements and graduation requirements (petition required-student to complete all standard processes to obtain time limit extensions)." ¶53. Next, on August 14, 2020, Plaintiff petitioned the SPC for additional time to graduate as a reasonable accommodation for his disability because his only remaining M.D. graduation requirement was to complete the Step 2 examination. ¶69. On August 27, 2020, Defendant sent a letter indicating that the deadline to complete his M.D. requirement was September 1, 2020. ¶70. On September 1, 2020, Defendants dismissed Plaintiff from the UCSD School of Medicine ***without a Review Meeting***, which according to their internal policy a hearing was not required. See ¶71; Def. Exhibit 1. Pursuant to the Guidelines for the Standing and Promotions Committee, "Students subject to dismissal from the School of Medicine ***may be asked*** to appear before the Standing and Promotions Committee for a Review Hearing." *Id.*

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

In addition, Defendant's Guidelines for the SPC, state "The following may cause a student to be subject to dismissal and ***will generally result in a Review Hearing***:…" *Id.* Therefore, an alleged requirement to file a CCP §1094.5 writ of administrative mandate to review an agencies decision was inapplicable because there was no hearing, no presentation or collection of evidence, no review of records, no recording of proceedings, etc... In addition, a writ of mandate was inapplicable because Defendant's internal rules and regulations made such hearings discretionary, therefore not meeting the "required" standard set forth in *Pomona Coll. v. Superior Court*. See Def. Exhibit 1. Defendant cannot claim a dismissal hearing was "required" because their own internal policies state "may be asked to appear", and based on the facts before this Court is that no hearing was in fact held.

None of Defendant's citations have any bearing on this disability discrimination case under Title II of the ADA and the Rehabilitation Act before this Court. *Doe v. Regents of the Unvi. of Cal*., 891 F.3d 1147 (9th Cir. 2018) is distinguishable. In *Doe*, after an investigation and two hearings, and after the University suspended John Doe after finding that he was responsible for the sexual assault, Plaintiff filed a federal lawsuit challenging the University's final administrative decision. Before this Court, there was no investigation or hearing, and instead Defendant discriminated against Plaintiff by failing to provide him his accommodations. See ¶¶85-105, 106-128. Furthermore, *Edgren v. Regents of the Univ. of Cal.*, 158 Cal.App.3d 516 (1984) is distinguishable because *Edgren* dealt exclusively with state law claims and administrative exhaustion, whereas, the litigation before this Court deals exclusively with federal claims. *Edgren* has no bearing on judicial exhaustion. In addition, Defendant misapply *Takahashi v. Bd. of Educ.*, 202 Cal.App.3d 1464 (1988) and *Mata v. City of Los Angeles,* 20 Cal.App.4[th] 141 (1993) as they too has no bearing on judicial exhaustion, and instead only pertain to res judicata and collateral estoppel principles. Defendant provides no authority

1    that Plaintiff must exhaust judicial remedies for federal claims under Title II of the

2    ADA and the Rehabilitation Act because no such requirement exist, thus

3    Defendant's argument fails.

4         However, if Plaintiff was required to exhaust his judicial remedies, then such

5    judicial exhaustion was futile. Like the related doctrine of exhaustion of

6    administrative remedies, the doctrine of primary jurisdiction is subject to a futility

7    exception. The party invoking the futility exception must be able to "positively

8    state that the [agency] has declared what its ruling will be on a particular case."

9    *Jonathan Neil & Assocs., Inc. v. Jones,* 33 Cal.4th 917, 936 (2004); *Blue Cross of*

10   *Calif., Inc. v. Sup.Ct.*, 180 Cal.4th 1237, 1260 (2009). Here, on December 29,

11   2020, Defendant denied Plaintiff's appeal, and concluded that the decision was

12   "neither arbitrary nor capricious." See Exhibit B. In addition, on July 12, 2022,

13   Plaintiff submitted a letter to the UCSD School of Medicine requesting that SPC

14   overturn its decision to dismiss, which in response the UCSD School of Medicine

15   ***informed him that he had exhausted his administrative appeal rights***, and that

16   they would not reconsider their prior decisions regarding his enrollment.  See

17   Exhibit C. Thus, Defendant has "positively declared" its ruling on its decision to

18   dismiss, which makes any judicial remedies futile.

19        In addition, it would be futile for Plaintiff to seek judicial exhaustion because

20   the limited grounds for writ of mandate are that "the reviewing body's decision is

21   not supported by substantial evidence" *Medical Staff of Sharp Mem. Hosp. v. Sup.*

22   *Ct.*, 121 Cal.4th 173, 183 (2004), "the reviewing body failed to follow procedures

23   contained in its own bylaws" *Oakland Raiders v. National Football League*, 93

24   Cal.4th 572, 581 (2001), and "the reviewing body failed to provide the member

25   with a fair hearing." *Yagub v. Salinas Valley Mem. Healthcare System*, 122 Cal.4th

26   474, 483 (2004).  Here, exhaustion is futile because there would be no jurisdiction

27   for a court to hear a 1094.5 writ of mandate because there was no required hearing

28   related to the dismissal. In addition, a writ a mandate would be futile because

1   Plaintiff is alleging disability discrimination, which is not within the limited
2   preview of mandamus review. Plaintiff is not directly challenging the evidence, the
3   procedures, or the failure to provide a fair hearing, but instead challenging that
4   Defendant's decision to dismiss was discriminatory based on Plaintiff's known
5   disabilities and need for accommodations.

6        Lastly, if the Court finds that a writ of mandate pursuant to CCP §1094.5 was
7   required, then Plaintiff respectfully requests that the Court should grant him leave
8   to amend. Defendants has not raised facts or authority that Plaintiff cannot still
9   pursue an administrative writ in state court while this federal case is pending, and
10  Plaintiff could still very well seek such a recourse, and therefore dismissal without
11  leave to amend would be prejudicial at this time as there is nothing before this
12  Court that the alleged defect in the complaint could not be cured by amendment.
13  *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

14              **C. Eleventh Amendment Does Not Bar Plaintiff's Claims for Relief**
15                  **under Title II of the ADA and the Rehabilitation Act**

16       First, Defendant does not contest and therefore admits that the Eleventh
17  Amendment does not bars Plaintiff's Second Claim for Relief under the
18  Rehabilitation Act, therefore Plaintiff will not brief this issue, and Defendant
19  should be precluded from raising it in Reply. Otherwise, Plaintiff's First Claim for
20  Relief under Title II of the ADA is not barred by the Eleventh Amendment.

21       "Congress may abrogate the State's Eleventh Amendment immunity when it
22  both unequivocally intends to do so and acts pursuant to a valid grant of
23  constitutional authority. *Bd. of Trustees of the Univ. of Ala. v. Garrett*,  531 U.S.
24  356, 363 (2001). Title II of the ADA contains an "unequivocal intent to abrogate
25  state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 154 (2006).

26       Defendant are correct to observe the U.S. Supreme Court decisions in
27  *Tennessee v. Lane*, 541 U.S. 509 (2004), and *United States v. Georgia*, 546 U.S.
28  151 (2006) as controlling on the question of whether Congress has validly

abrogated a state actor's Eleventh Amendment Immunity in regard to Title II of the ADA cases. In addition, Defendant is correct that the Ninth Circuit has not been confronted with this present issue before this Court requiring an examination whether Congress validly abrogated a State's sovereign immunity with regard to a Plaintiff's Title II claim in the context of postsecondary education. Nevertheless, four other circuits have decided cases similar to the present one and concluded the Eleventh Amendment was not a bar to the Plaintiff's Title II claim in regard to public education. See *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524 (3rd Cir. 2007); *Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005); *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.,* 405 F.3d 954 (11th Cir. 2005).

In *Do v. Arizona State University*, No. CV-22-00190-PHX-JJT, 2022 WL 4235599, at 6* (D. Ariz. Sept. 14, 2022), the United States District Court of Arizona, in an unpublished decision, thoroughly analyzed *Bowers*, *Toledo*, *Constantine*, and *Ass'n for Disabled Americans, Inc*., to find Congress clearly expressed its intention to abrogate the States' Eleventh Amendment immunity in Title II of the ADA and did so pursuant to a valid exercise of constitutional authority, therefore the Eleventh Amendment does not bar Plaintiff's Title II claim.

In review of *Do v. Arizona State University*, the court stated the following:

> "The *Constantine* court recognized on a general level that "it is settled that Title II was enacted in response to a pattern of unconstitutional disability discrimination by States and nonstate government entities with respect to the provision of public services." *Id.* (citing *Tennessee v. Lane*, 541 U.S. 509 (2004)). The other three circuit courts to examine this question tailored their analyses to Congress's authority to address discrimination against the disabled in public education specifically, and those circuit courts did not distinguish between public elementary/secondary education and public postsecondary education. *Toledo*, 454 F.3d at 36– 37 (noting the Supreme Court's recognition of "the vital importance of all levels of public education in preparing students for work and citizenship as well as the unique harm that occurs when some students are denied that opportunity"); see also *Bowers*, 475 F.3d at 555 & n.35 (noting that Congress enacted Title II "against the backdrop of our regrettable

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**

national history in educating students with disabilities"); *Ass'n for Disabled Americans*, 405 F.3d at 957 (noting the history of unconstitutional discrimination in public education and stating "the constitutional right to equality in education, though not fundamental, is vital to the future success of our society")."

Similar, in *DeCotiis v. Whittemore*, 842 F.Sup.2d 354, 370-372 (D. Me. 2012) "Circuit courts relying on both Supreme Court cases have held that Title II of the ADA validly abrogates sovereign immunity with respect to public education."

Lastly, none of the Defendant's citations involve Title II of the ADA as it relates to public education discrimination case, thus all Defendant's cases are inapplicable. For example, Defendant concedes that *Phiffer v. Columbia River Correctional Institute*, 384 F.3d 791 (2004) "is quite distinct from the facts of the present case". See Def. MTD, 16:5. *Phiffer* has no bearing on Title II of the ADA as it relates to  public education discrimination case because it is a case involving a prison inmate. And the same is said of all other cases Defendant's cite to outside of the Ninth circuit, which have no bearing on the litigation before this Court.

### D. Plaintiff Should Be Given Leave to Amend

If the Court is inclined to grant any of Defendant's Motion, then the Court should grant leave to amend. Dismissal without leave to amend is improper unless "it is clear, upon de novo review, that the complaint would not be saved by any amendment." *Missouri ex rel. Koster v. Harris*, 847 F3d 646, 655 (9th Cir. 2017); *Carvalho v. Equifax Information Services, LLC*, 629 F3d 876, 892-893 (9th Cir. 2010) "The court should freely give leave when justice so requires." F.R.CIV. P. Rule 15(a)(2). Leave to amend is granted liberally because there is a policy that cases should be decided on their merits. *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013). Courts have identified factors that may justify denial of leave to amend, including futility of amendment. *Brown v. Stored Value Cards, Inc*., 953 F.3d 567, 574 (9th Cir. 2020).

Here, Plaintiff has not amended his Complaint, and a new ruling will likely

provide the basis for new allegations or amendment. There has been no undue delay or bad faith. Amendment would not be futile at this early stage. There is no prejudice to Defendant.

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirely. However, in the event that the Court grants any portion of the motion, then Plaintiff respectfully requests leave to amend.


DATED: December 22, 2022          LAW OFFICES OF HIRJI & CHAU, LLP


                                  Alexander F. Rodriguez
                                  Attorney for Plaintiff

**PLAINTIFF'S OPPOITION TO DEFENDANT REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**