UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA and DOES 1 through 10, inclusive,<br><br>　　　　　　　Defendants. | Case No.: 22-CV-1506 JLS (WVG)<br><br>**ORDER (1) GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE; (2) GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE; AND (3) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>(ECF Nos. 19, 19-3, 24-2) |

　　　　Presently before the Court is Defendant Regents of the University of California's ("Defendant" or "Regents") Motion to Dismiss Plaintiff's Complaint ("Mot.," ECF No. 19) and Request for Judicial Notice (ECF No. 19-3) in support of the same. Plaintiff John Doe filed an Opposition to the Motion ("Opp'n," ECF No. 24), which was accompanied by a Request for Judicial Notice (ECF No. 24-2). Defendant then filed a Reply in support of the Motion ("Reply," ECF No. 26). Having reviewed Plaintiff's Complaint, the Parties' briefing, and the law, the Court **GRANTS** Defendant's Request for Judicial Notice,

**GRANTS** Plaintiff's Request for Judicial Notice, and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss Plaintiff's Complaint.

## BACKGROUND

Plaintiff is a former student of the University of California, San Diego ("UCSD") School of Medicine. Compl. ¶ 2. In 2015, a drunken driver crashed into a vehicle in which Plaintiff and other UCSD School of Medicine students were passengers. *Id.* ¶ 3. Two students were killed in the crash, and Plaintiff suffered a fractured sternum and traumatic brain injury. *Id.* Plaintiff was subsequently diagnosed with "a specific learning disability with impairment in reading fluency and rate, specific memory difficulty with free auditory recall only, and post-traumatic stress disorder." *Id.* ¶ 15. According to Plaintiff, the crash "derailed" his life and "the pace upon which he could complete his M.D. graduation requirements." *Id.* ¶ 4.

The UCSD School of Medicine typically requires its students to meet all graduation requirements within six years. *Id.* ¶ 19. One such requirement is that students pass the first two of three "Step" examinations constituting the United States Medical Licensing Examination, which medical students must pass to become licensed medical practitioners in the United States. *Id.* ¶ 18. Plaintiff alleges that his disabilities necessitated certain academic accommodations, including "time and a half on examinations, including STEP examinations; extended time to complete his M.D. graduation requirements, including STEP examinations; testing in a quiet room; and the ability [to] read text out loud to himself." *Id.* ¶ 20.

According to the Complaint, Defendant provided Plaintiff with many of his requested academic accommodations. In 2016, UCSD's Standing and Promotions Committee afforded Plaintiff an additional year to meet his graduation requirements, making the effective deadline June 2019. *Id.* ¶¶ 44–45. In 2018, UCSD's Office for Students with Disabilities provided Plaintiff with extended test-taking time, as well as testing in "[s]eparate, quiet, [and] distraction-reduced" environments. *Id.* ¶ 53 (internal quotations omitted). In 2019, UCSD's Standing and Promotions Committee again afforded

Plaintiff an additional year to complete his graduation requirements, pushing Plaintiff's deadline to June 2020. *Id.* ¶ 59. In May 2020, UCSD's Standing and Promotions Committee extended Plaintiff's deadline to complete his graduation requirements to September 1, 2020. *Id.* ¶¶ 66–67.

In July 2020, Plaintiff failed, for the second time, to pass the Step 2 examination, which was his only remaining requirement to graduate from the UCSD School of Medicine. *Id.* ¶¶ 68–69. In August 2020, Plaintiff again requested that the UCSD School of Medicine extend his deadline to complete his graduation requirements. *Id.* ¶ 69. In response, UCSD's Standing and Promotions Committee sent Plaintiff a letter informing him that September 1, 2020, remained the deadline for Plaintiff to complete his graduation requirements. *See id.* ¶¶ 69–70.

On September 1, 2020, Defendant dismissed Plaintiff from the UCSD School of Medicine, as he had not completed his graduation requirements in the designated timeframe. *Id.* ¶ 71. In October 2020, Plaintiff submitted an appeal of his dismissal to Dr. Steven R. Garfin, Interim Dean of the UCSD School of Medicine. *Id.* ¶ 75. Dr. Garfin denied Plaintiff's appeal in December 2020. *Id.* ¶ 76.

Plaintiff claims that the UCSD School of Medicine notified the National Board of Medical Examiners ("NBME"), the organization that administers the Step examinations, on June 3, 2021, that Plaintiff was no longer enrolled as a medical student at the school. *Id.* ¶ 77. According to Plaintiff, the NBME subsequently informed him that he was ineligible to retake the Step 2 examination, as applicants must be enrolled in a medical school to take the exam. *Id.* ¶ 78–79. Due to his inability to retake the Step 2 examination, Plaintiff is effectively barred from becoming a licensed medical practitioner. *See id.* ¶¶ 18, 78–79.

On July 12, 2022, Plaintiff sent a letter to the UCSD School of Medicine requesting that the UCSD Standing and Promotions Committee overturn its decision to dismiss him. *Id.* ¶ 81. According to Plaintiff, the UCSD School of Medicine informed him on the same

///

day that "he had exhausted his administrative appeal rights, and that they would not reconsider their prior decisions regarding his enrollment." *Id.* ¶ 82.

Plaintiff filed the instant action on August 31, 2022, asserting four causes of action for violation of the Americans with Disabilities Act ("ADA"), violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), violation of California's Unruh Civil Rights Act, and violation of California Government Code § 11135. *See id.* ¶¶ 85–147. Generally, Plaintiff alleges that Defendant unlawfully discriminated against him on the basis of his disabilities by failing to timely discuss reasonable accommodations for his disabilities, failing to provide him with reasonable accommodations for his medical examinations at the UCSD School of Medicine, and failing to provide him reasonable accommodations through an extension of "time to complete his M.D. graduation requirements, or in the alternative, graduate[] him from the UCSD School of Medicine without passing his last requirement of the Step 2 examination." *Id.* ¶ 83.

Defendant submitted the instant Motion to Dismiss on November 23, 2022. *See* Mot. Defendant argues that the Complaint should be dismissed with prejudice for lack of subject matter jurisdiction and failure to state a claim. *See* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Mem.," ECF No. 19-1).

**REQUESTS FOR JUDICIAL NOTICE**

Defendant requests that the Court take judicial notice of the following documents: (1) an excerpt from the UCSD School of Medicine's Advisor and Student Handbook regarding its administrative appeals process for student dismissals and (2) Appendix III to the UCSD School of Medicine's Advisor and Student Handbook regarding its administrative appeals process for denials of requests for accommodations. *See* ECF No. 19-3 at 2–3.[1]

/ / /

---

[1] Throughout this Order, pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

    Meanwhile, Plaintiff requests that the Court take judicial notice of the following documents: (1) a copy of a webpage from the Federation of State Medical Boards entitled "State Specific Requirements for Initial Medical Licensure"; (2) a December 29, 2020, letter from Dr. Garfin to Plaintiff; and (3) an email from Dr. Laura Baker of the UCSD School of Medicine to Plaintiff. *See* ECF No. 24-2 at 2.

    As a general rule, a district court cannot rely on evidence outside the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 1999)).

    Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, the Ninth Circuit's incorporation by reference doctrine "permits a court to consider a document 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162–63 (9th Cir. 2019) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). The doctrine also extends "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Here, the Court finds that the UCSD School of Medicine's Advisor and Student Handbook originates from a source "whose accuracy cannot reasonably be questioned" and contains facts central to the Parties' dispute over whether Plaintiff was required to exhaust administrative and judicial remedies prior to filing suit. *See* Mem. at 12–14; Opp'n at 17–24. Plaintiff does not question the authenticity of the Handbook; in fact, he relies on it in fashioning his argument. *See* Opp'n at 21–22. The Court therefore **GRANTS** Defendant's requests for judicial notice in their entirety.

Additionally, each of Plaintiff's proposed documents are referenced extensively in the Complaint. *See* Compl. ¶¶ 18–19 (discussing requirements to become licensed medical practitioner in the United States); *id.* ¶¶ 75–76 (discussing communications with Dr. Steven R. Garfin); *id.* ¶¶ 81–82 (discussing communications with the UCSD School of Medicine, during which Plaintiff was informed he had "exhausted his administrative appeal rights"). The letters from Dr. Garfin and Dr. Baker are also central to Plaintiff's argument that he exhausted administrative remedies prior to filing suit in federal court. Defendant does not question the authenticity of Plaintiff's proposed documents or otherwise challenge Plaintiff's requests for judicial notice. *See* Mem.; Reply. For these reasons, the Court **GRANTS** Plaintiff's requests for judicial notice in their entirety as well.

## DEFENDANT'S MOTION TO DISMISS

I. **Legal Standards**

   A. *Federal Rule of Civil Procedure 12(b)(1)*

Federal courts are courts of limited jurisdiction and, as such, have an obligation to dismiss claims for which they lack subject matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Federal Rule of Civil Procedure 12(b)(1) allows a party to file a motion to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008)).

/ / /

"A jurisdictional challenge under Rule 12(b)(1) may be 'facial' or 'factual.'" *Kohler v. Flava Enterprises, Inc.*, No. 10-CV-730-IEG NLS, 2011 WL 1597468, at *1 (S.D. Cal. Apr. 25, 2011) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A facial challenge asserts that the pleadings are insufficient on their face to invoke federal jurisdiction. In evaluating such a challenge, a court accepts the factual allegations in the complaint as true." *Alvarez v. United States*, No. 16-CV-2959 DMS (BLM), 2017 WL 3723926, at *1 (S.D. Cal. Jan. 17, 2017) (internal citations omitted). In contrast, where the defendant challenges the factual basis underlying the allegations, the court need not accept the allegations as true and may instead make factual determinations. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

### B.   *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible

1   when the facts pled "allow the court to draw the reasonable inference that the defendant is
2   liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at
3   556).  That is not to say that the claim must be probable, but there must be "more than a
4   sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent
5   with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting
6   *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions"
7   contained in the complaint. *Id.*  This review requires context-specific analysis involving
8   the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted).
9   "[W]here the well-pleaded facts do not permit the court to infer more than the mere
10  possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the
11  pleader is entitled to relief.'" *Id.*  Finally, "[t]he court need not . . . accept as true
12  allegations that contradict matters properly subject to judicial notice or by exhibit."
13  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on*
14  *denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

15       Where a complaint does not survive the Rule 12(b)(6) analysis, the Court will grant
16  leave to amend unless it determines that no modified contention "consistent with the
17  challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*,
18  957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture*
19  *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "The Ninth Circuit has instructed that the policy
20  favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp.,*
21  *P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v.*
22  *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

23  **II.   Analysis**

24       **A.   Abandoned Claims**

25       Plaintiff requests that the Court dismiss without prejudice his third cause of action
26  for violation of California's Unruh Civil Rights Act and his fourth cause of action for
27  violation of California Government Code § 11135.  Opp'n at 17.  Defendant does not
28  oppose Plaintiff's request.  *See* Reply.  Accordingly, the Court **GRANTS** Defendant's

Motion to Dismiss Plaintiff's third and fourth causes of action and **DISMISSES WITHOUT PREJUDICE** those causes of action.

### B.     Exhaustion

Defendant argues that prior to bringing his claims in federal court, Plaintiff was required to exhaust available administrative and judicial remedies for his challenge to Defendant's denial of his request for accommodations. Mem. at 12–14. Plaintiff, on the other hand, contends that because he is proceeding only on his federal law causes of action, he was not required to exhaust his administrative or judicial remedies prior to seeking relief in federal court. Opp'n at 17–23. In the alternative, Plaintiff argues that he did exhaust his administrative remedies, and that exhaustion of his judicial remedies was futile and therefore unnecessary. *See id.* at 23–24.

Having dismissed without prejudice Plaintiff's state law claims, only Plaintiff's claims for violation of Title II of the ADA and violation of § 504 of the Rehabilitation Act remain. Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, § 504 of the Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

"[N]either Title II of the ADA nor section 504 of the Rehabilitation Act generally requires administrative exhaustion before filing suit." *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061 (9th Cir. 2007); *see also Cable v. Dep't of Developmental Servs. of State of Cal.*, 973 F. Supp. 937, 940 (C.D. Cal. 1997) ("Courts have consistently held there is no exhaustion requirement under Title II of the ADA."); *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990) ("[P]rivate plaintiffs suing under section 504 need not first exhaust administrative remedies."). Consequently, Plaintiff need not have exhausted any

1  administrative remedies prior to asserting his claims for violation of Title II of the ADA
2  and violation of § 504 of the Rehabilitation Act.

3      Defendant's Motion cites to cases supporting the proposition that "[a] California
4  litigant bringing a state law claim must exhaust all available administrative remedies before
5  resorting to the courts for relief." Mem. at 12. Plaintiff, however, has abandoned his state
6  law claims, rendering the argument moot. *Supra* p. 7. Nevertheless, in its Reply,
7  Defendant cites several cases purportedly holding that Plaintiff was required to exhaust
8  available administrative remedies for his Title II and § 504 claims. Reply at 3. Defendant's
9  supporting caselaw is inapposite, however, as the cited cases do not involve alleged
10 violations of Title II of the ADA and/or § 504 of the Rehabilitation Act. *See id.* (citing
11 *State Bd. of Chiropractic Examiners v. Superior Ct.*, 201 P.3d 457 (Cal. 2009) (alleged
12 violation of the California Whistleblower Protection Act); *E.E.O.C. v. Farmer Bros. Co.*,
13 31 F.3d 891 (9th Cir. 1994) (alleged violation of Title VII of the ADA and the California
14 Fair Employment and Housing Act); *Leong v. Potter*, 347 F.3d 1117 (9th Cir. 2003)
15 (alleged violation of Title VII of the Civil Rights Act of 1964 and § 505 of the
16 Rehabilitation Act); *Vinieratos v. U.S., Dep't of Air Force*, 939 F.2d 762 (9th Cir. 1991)
17 (alleged violation of Title VII of the Civil Rights Act of 1964 and § 505 of the
18 Rehabilitation Act, among others)).

19     Nor was Plaintiff required to exhaust any judicial remedies prior to bringing his
20 claims in federal court. Defendant contends that California Code of Civil Procedure
21 §§ 1085 and 1094.5 each require that Plaintiff challenge Defendant's denial of his request
22 for accommodations through a petition for writ of mandamus prior to bringing suit. Neither
23 section, however, is applicable here.

24     California Code of Civil Procedure § 1094.5 "provides a mechanism to seek judicial
25 review," *Doe v. White*, 440 F. Supp. 3d 1074, 1080 (N.D. Cal. 2020), of a "final
26 administrative order or decision made as the result of a proceeding in which by law a
27 hearing is required to be given, evidence is required to be taken, and discretion in the
28 determination of facts is vested in the inferior tribunal, corporation, board, or officer," Cal.

Code Civ. Proc. § 1094.5(a). Section 1085, meanwhile, provides as follows:

> A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person.

Cal. Code Civ. Proc. § 1085.

"The determination of whether Code of Civil Procedure section 1094.5 or 1085 applies does not depend on whether the agency is required by statute to hold an evidentiary hearing in the matter, but instead turns on the nature of the challenged action." *Cal. Water Impact Network v. Newhall Cnty. Water Dist.*, 75 Cal. Rptr. 3d 393, 407 n.19 (Cal. Ct. App. 2008). "It is generally recognized that traditional mandamus under section 1085 applies to 'quasi-legislative' decisions, defined as those involving 'the formulation of a rule to be applied to all future cases,' while administrative mandamus under section 1094.5 applies to 'quasi-judicial' decisions, which involve 'the actual application of such a rule to a specific set of existing facts.'" *S. Cal. Cement Masons Joint Apprenticeship Comm. v. Cal. Apprenticeship Council*, 153 Cal. Rptr. 3d 448, 455 (Cal. Ct. App. 2013) (quoting *Friends of the Old Trees v. Dep't of Forestry & Fire Prot.*, 61 Cal. Rptr. 2d 297, 303 (Cal. Ct. App. 1997) (in bank)); *see also W. States Petroleum Ass'n v. Superior Ct.*, 888 P.2d 1268, 1271 (Cal. 1995) ("Courts have traditionally held that quasi-legislative actions must be challenged in traditional mandamus proceedings rather than in administrative mandamus proceedings even if the administrative agency was required by law to conduct a hearing and take evidence.").

Here, § 1094.5 is inapplicable because Plaintiff is not challenging a "final administrative order or decision." *See* Cal. Code Civ. Proc. § 1094.5. "In failure to accommodate cases, the liability arises upon the denial of reasonable accommodation in the first instance, not when a quasi-judicial body takes some action related to the failure to

accommodate." *Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 970 (N.D. Cal. 2013). In other words, Plaintiff's challenge relates to the initial denial of his August 2020 request for an extension of time to complete his graduation requirements, not to the results of any quasi-judicial proceeding confirming the denial, assuming such a proceeding occurred here. *See id.* (concluding § 1094.5 was inapplicable, even assuming defendant university's grievance procedures qualified as "quasi-judicial," because disabled student's failure to accommodate claims were "not based on the validity of those procedures or the results of the proceeding"). Section 1094.5 is also inapplicable because there is no requirement, either under state law or Defendant's internal rules and regulations, that students subject to dismissal be afforded a hearing at which evidence must be taken. *See* Opp'n 21–22; ECF No. 19-2 at 9 (UCSD Standing and Promotions guidelines providing that students subject to dismissal from the UCSD School of Medicine "*may* be asked to appear before the Standing and Promotions Committee" (emphasis added)).

Moreover, § 1085 is inapplicable as neither party contends that a "quasi-legislative" decision, as defined by California courts, is at issue. *See S. Cal. Cement Masons Joint Apprenticeship Comm.*, 153 Cal. Rptr. 3d at 455; *see also State of California v. Superior Ct.*, 524 P.2d 1281, 1287 (Cal. 1974) (in bank) (noting § 1085 "may be employed to compel the performance of a duty which is purely ministerial in character; it cannot be applied to control discretion as to a matter lawfully entrusted to [an administrative agency]").

Defendant cites to no case where California Code of Civil Procedure §§ 1085 or 1094.5 precluded a plaintiff from asserting claims arising under Title II of the ADA or § 504 of the Rehabilitation Act in federal court. *See* Mot.; Reply. Further, the Court finds the cases relied upon by Defendant to be distinguishable. Defendant cites to *Doe v. Regents of the University of California*, 891 F.3d 1147 (9th Cir. 2018), in support of its contention that Plaintiff was required to exhaust judicial remedies before filing suit in federal court. There, following an investigation and two administrative hearings, the University of California, Santa Barbara ("UCSB") found the plaintiff ("Student") responsible for the sexual assault of another student and suspended Student for two semesters. *Id.* at 1150.

Student filed suit in federal court, alleging his suspension was invalid because UCSB "did not grant him a fair hearing, exceeded its jurisdiction, and 'committed a prejudicial abuse of discretion,' among other allegations." *Id.* at 1153. Student asserted claims for violations of Title IX, 42 U.S.C. § 1983, and numerous state laws. *Id.* at 1150–52. The Ninth Circuit held that Student's Title IX and § 1983 claims were precluded "because he has failed to exhaust judicial remedies by filing a § 1094.5 writ petition in state court." *Id.* at 1154. The university's suspension of Student, noted the Ninth Circuit, "is the sort of 'adjudicatory, quasi-judicial decision' that is subject to the judicial exhaustion requirement." *Id.* (quoting *Y.K.A. Indus., Inc. v. Redev. Agency of San Jose*, 94 Cal. Rptr. 3d 424, 444 (Cal. Ct. App. 2009)).

In *Doe*, the plaintiff's suspension was issued via a quasi-judicial decision at the conclusion of an administrative disciplinary proceeding. Moreover, Student specifically alleged the procedures of the disciplinary proceeding were unlawful. As such, Student was obligated to challenge the administrative decision through a § 1094.5 writ, according to the Ninth Circuit. Here, in contrast, Plaintiff's claims for violation of Title II of the ADA and § 504 of the Rehabilitation Act are not challenging the results or procedures of a "quasi-judicial" proceeding. Rather, Plaintiff is challenging the initial failure to provide reasonable accommodations, which arose prior to any "quasi-judicial" decision by an administrative agency. Accordingly, Plaintiff's claims are not precluded by his failure to file a § 1094.5 writ in state court.

*Doe* is also distinguishable in that it did not involve alleged violations of either Title II of the ADA or § 504 of the Rehabilitation Act. 891 F.3d at 1150–52. Defendant points to *Edgren v. Regents of University of California*, 205 Cal. Rptr. 6 (Cal. Ct. App. 1984), and *Takahashi v. Board of Education*, 249 Cal. Rptr. 578 (Cal. Ct. App. 1988), in support of its argument, but those cases, like *Doe*, do not involve denials of requests for reasonable accommodations and, therefore, are inapposite.

/ / /

/ / /

Finally, in its Reply, Defendant urges the Court to extend California's judicial exhaustion requirements to causes of action brought under Title II of the ADA and the Rehabilitation Act. *See* Reply at 6. The Court declines to do so. As there is no requirement that plaintiffs exhaust administrative remedies prior to bringing claims under Title II of the ADA or § 504 of the Rehabilitation Act, *supra* pp. 10–12, imposing a requirement that plaintiffs challenge final administrative decisions in state court prior to filing suit would be nonsensical.

Thus, to the extent Defendant argues for dismissal on the basis of exhaustion, the Court **DENIES** the Motion. As the Court has found that Plaintiff was not required to exhaust administrative or judicial remedies prior to bringing suit, it is unnecessary to address Plaintiff's arguments in the alternative that he did exhaust all available administrative and judicial remedies.

### C.  *Eleventh Amendment Immunity*

Next, Defendant argues that Plaintiff's cause of action under Title II of the ADA should be dismissed because Defendant is a state agency entitled to Eleventh Amendment immunity. Mem. at 15.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Accordingly, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. 279, 280 (1973). "It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). The Ninth Circuit "has repeatedly held that the Regents are an arm of the state entitled to

/ / /

Eleventh Amendment immunity." *Feied v. Regents of the Univ. of Cal.*, 188 F. App'x 559, 561 (9th Cir. 2006).

"Nevertheless, the Supreme Court has recognized that Congress may, through its enforcement powers under § 5 of the 14th Amendment, abrogate Eleventh Amendment immunity." *Vartanian v. State Bar of Cal.*, No. 5:18-CV-00826-EJD, 2018 WL 2724343, at *4 (N.D. Cal. June 6, 2018) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). "There are two predicate questions necessary to determine whether Congress abrogated Eleventh Amendment immunity: 'first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority.'" *Kohn v. State Bar of Cal.*, 497 F. Supp. 3d 526, 534 (N.D. Cal. 2020) (quoting *Kimel*, 528 U.S. at 73).

It is indisputable that Congress unequivocally expressed its intent to abrogate Eleventh Amendment immunity through the enactment of the ADA. The ADA specifically provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202; *see also Tennessee v. Lane*, 541 U.S. 509, 518 (2004) (concluding the ADA unequivocally expressed Congress's intent to abrogate Eleventh Amendment immunity); *United States v. Georgia*, 546 U.S. 151, 154 (2006) (same). Accordingly, the relevant inquiry is "whether the statutory provision removing Eleventh Amendment immunity for private suits under Title II of the ADA is a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment." *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 957 (11th Cir. 2005).

"Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment." *Lane*, 541 U.S. at 518 (2004). "Under this 'broad enforcement power,' Congress may 'enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct.'" *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 550 (3d Cir. 2007)

(internal citations omitted) (first quoting *Lane*, 541 U.S. at 518; then quoting *Nev. Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 727–28 (2003)), *amended on reh'g* (Mar. 8, 2007). "When Congress seeks to remedy or prevent unconstitutional discrimination, § 5 authorizes it to enact prophylactic legislation proscribing practices that are discriminatory in effect, if not in intent, to carry out the basic objectives of the Equal Protection Clause." *Lane*, 541 U.S. at 520. "Thus, Congress's § 5 authority can sweep in conduct that may possibly be constitutional." *Bowers*, 475 F.3d at 551.

Congress's § 5 power is not unlimited. In *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997), the Supreme Court held that § 5 legislation is only valid if it exhibits "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." The Supreme Court employs a three-step inquiry to determine whether a particular statute satisfies the congruence and proportionality test. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365–70 (2001). Under this test in the context of disability discrimination, this Court must:

> [1] 'identify with some precision the scope of the constitutional right at issue,' then [2] 'examine whether Congress identified a history and pattern of unconstitutional . . . discrimination against the disabled,' and finally [3] evaluate whether the 'rights and remedies created by the ADA against the States' are congruent and proportional to the targeted violation.

*Do v. Ariz. State Univ.*, No. CV-22-00190-PHX-JJT, 2022 WL 4235599, at *5 (D. Ariz. Sept. 14, 2022) (internal citations omitted) (quoting *Garrett*, 531 U.S. at 365–70).

The Ninth Circuit has not addressed "whether Congress validly abrogated a State's sovereign immunity with regard to a plaintiff's Title II claim in the context of postsecondary education." *Id.*; *see also Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 793 (9th Cir. 2004) ("It is . . . open to question whether Title II validly abrogates state sovereign immunity where no such fundamental right is at issue."); *Montes v. Desert Cmty. Coll. Dist.*, No. EDCV151846JGBDTBX, 2016 WL 10566650, at *2 (C.D. Cal. Jan. 11, 2016) (noting "the Ninth Circuit has not yet ruled on the subject").

Four other circuit courts, however, have addressed the issue, and each has concluded that the Eleventh Amendment did not bar claims brought under Title II of the ADA for discrimination in the context of public higher education. *See Bowers*, 475 F.3d at 553–56 (concluding "Title II is a justifiable prophylactic measure to avoid the risk of unconstitutional treatment of disabled students"); *Toledo v. Sanchez*, 454 F.3d 24, 36–40 (1st Cir. 2006) (concluding "Title II, as it applies to the class of cases implicating the right of access to public education, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment"); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 486–490 (4th Cir. 2005) (concluding "Title II of the ADA is valid § 5 legislation, at least as it applies to public higher education"); *Ass'n for Disabled Americans, Inc.*, 405 F.3d at 958–59 (11th Cir. 2005) (concluding "Title II of the ADA, as applied to access to public education, constitutes a valid exercise of Congress's enforcement power under Section 5 of the Fourteenth Amendment"); *see also Guttman v. Khalsa*, 669 F.3d 1101, 1122 (10th Cir. 2012) (noting that "there is a trend of courts holding that, absent the need to vindicate a fundamental right or protect a suspect class, Congress may not abrogate state sovereign immunity," but there is "one exception to this trend: discrimination against students in public education"). The Court agrees with this persuasive authority and finds that Title II of the ADA is a valid exercise of Congress's authority under § 5 of the Fourteenth Amendment. *See Unverferth v. Liberty Union High Sch. Dist.*, No. C-15-1721 EMC, 2015 WL 5012931, at *1 (N.D. Cal. Aug. 24, 2015) (citing aforementioned circuit court authorities in concluding that "[t]he ADA's abrogation of sovereign immunity with respect to public education meets the proportional and convergence test"); *Montes*, 2016 WL 10566650, at *2 (same); *Do*, 2022 WL 4235599, at *5–7 (same).

Under the first step of the congruence and proportionality test, this Court must "identify with some precision the scope of the constitutional right at issue." *Garrett*, 531 U.S. at 365. The Supreme Court has previously recognized that Title II of the ADA "seeks to enforce this prohibition on irrational disability discrimination." *Lane*, 541 U.S. at 522;

*see also Bowers*, 475 F.3d at 554 (describing the right at issue as "the right to be free from irrational disability discrimination"); *Ass'n for Disabled Americans, Inc.*, 405 F.3d at 957 (11th Cir. 2005) (same).

Next, this Court must "examine whether Congress identified a history and pattern of unconstitutional employment discrimination by the States against the disabled." *Garrett*, 531 U.S. at 368.  In *Lane*, the Supreme Court noted a "pattern of unequal treatment [of people with disabilities] in the administration of a wide range of public services, programs, and activities, including . . . public education." *Lane*, 541 U.S. at 522; *Bowers*, 475 F.3d at 554 ("The Court in *Lane* concluded that Congress had clearly identified a history and pattern of disability discrimination with respect to public services."); *Constantine*, 411 F.3d at 487 ("After *Lane*, it is settled that Title II was enacted in response to a pattern of unconstitutional disability discrimination by States and nonstate government entities with respect to the provision of public services.").

Finally, the Court must evaluate "the congruence and proportionality of Title II with respect to public education." *Bowers*, 475 F.3d at 555.  The Third Circuit in *Bowers* persuasively explained why Title II of the ADA is "a justifiable prophylactic measure to avoid the risk of unconstitutional treatment of disabled students":

> The remedy chosen by Congress in Title II in the area of public education is a narrow one: access to education.  Qualified individuals with a disability may not be excluded from participating in public education on the basis of their disability.  Thus, states are free to enact a myriad of laws relating to public education, including laws that may negatively impact disabled students, so long as those laws do not discriminate against students because of their disabilities.  Congress enacted Title II against the backdrop of our regrettable national history in educating students with disabilities. . . . [O]ur national history in educating students with disabilities leaves much to be desired.  In many past instances, States have made educational decisions on the basis of irrational misconceptions and stereotypes held about disabled students.

*Bowers*, 475 F.3d at 555 (internal citations omitted); *see also Constantine*, 411 F.3d at 489 ("Insofar as Title II requires States to make 'reasonable' modifications to their educational programs in order to ensure that disabled citizens have access to those programs, this requirement is congruent with the constitutional imperative that States avoid irrational discrimination."); *Toledo*, 454 F.3d at 40 ("Title II creates an affirmative obligation for states to 'reasonably modify' their programs so as to accommodate the 'otherwise qualified' disabled students of this nation. This obligation is not disproportionate to the need to protect against the outright exclusion and irrational disability discrimination that such students experienced in the recent past."); *Ass'n for Disabled Americans, Inc.*, 405 F.3d at 959 ("Discrimination against disabled students in education affects disabled persons' future ability to exercise and participate in the most basic rights and responsibilities of citizenship, such as voting and participation in public programs and services. The relief available under Title II of the ADA is congruent and proportional to the injury and the means adopted to remedy the injury."). In light of the history of state discrimination against disabled students and the limitations on the scope of Title II, the Court finds that Title II is a congruent and proportional remedy to the targeted injury.

Accordingly, the Court concludes that Congress constitutionally abrogated state sovereign immunity under Title II of the ADA. Plaintiff's Title II claim against Defendant, therefore, is not barred by the Eleventh Amendment, and the Court **DENIES** Defendant's Motion to the extent it is based on this ground.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

*Bowers*, 475 F.3d at 555 (internal citations omitted); *see also Constantine*, 411 F.3d at 489 ("Insofar as Title II requires States to make 'reasonable' modifications to their educational programs in order to ensure that disabled citizens have access to those programs, this requirement is congruent with the constitutional imperative that States avoid irrational discrimination."); *Toledo*, 454 F.3d at 40 ("Title II creates an affirmative obligation for states to 'reasonably modify' their programs so as to accommodate the 'otherwise qualified' disabled students of this nation. This obligation is not disproportionate to the need to protect against the outright exclusion and irrational disability discrimination that such students experienced in the recent past."); *Ass'n for Disabled Americans, Inc.*, 405 F.3d at 959 ("Discrimination against disabled students in education affects disabled persons' future ability to exercise and participate in the most basic rights and responsibilities of citizenship, such as voting and participation in public programs and services. The relief available under Title II of the ADA is congruent and proportional to the injury and the means adopted to remedy the injury."). In light of the history of state discrimination against disabled students and the limitations on the scope of Title II, the Court finds that Title II is a congruent and proportional remedy to the targeted injury.

Accordingly, the Court concludes that Congress constitutionally abrogated state sovereign immunity under Title II of the ADA. Plaintiff's Title II claim against Defendant, therefore, is not barred by the Eleventh Amendment, and the Court **DENIES** Defendant's Motion to the extent it is based on this ground.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**CONCLUSION**

In light of the foregoing, the Court **GRANTS** Defendant's Request for Judicial Notice (ECF No. 19-3), **GRANTS** Plaintiff's Request for Judicial Notice (ECF No. 24-2), and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 19). Specifically, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's third and fourth causes of action; the Motion is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: April 10, 2023

Hon. Janis L. Sammartino
United States District Judge