UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>                 Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA and DOES 1 through 10, inclusive,<br><br>                 Defendants. | Case No.: 22-CV-1506 JLS (VET)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S EX PARTE MOTION TO STRIKE OR SEAL, AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO PROCEED ANONYMOUSLY**<br><br>(ECF Nos. 72, 76) |

      Presently before the Court is Plaintiff John Doe's Motion for Leave to Proceed Anonymously ("Mot," ECF No. 76), to which Defendant Regents of the University of California filed an Opposition ("Opp'n," ECF No. 78) and Plaintiff filed a Reply ("Reply," ECF No. 80). The Court set the Motion for a hearing on April 23, 2025, but it now finds the matter appropriate to decide on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). Also before the Court is Defendant's Unopposed *Ex Parte* Motion to Strike or Seal Filings that Inadvertently Included Private Information ("Ex Parte Mot.," ECF No. 72-1). Having carefully considered the Motions, the Parties' arguments, and the

law, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Leave to Proceed Anonymously and **GRANTS** Defendant's *Ex Parte* Motion to Strike or Seal.

## BACKGROUND

Plaintiff filed this disability discrimination case on August 31, 2022, under the pseudonym "John Doe." ECF No. 1 ("Compl."). To summarize, Plaintiff enrolled in the University of California, San Diego School of Medicine ("University") in 2012, after which his first few years were relatively uneventful. *Id.* ¶ 26. But Plaintiff's life was suddenly turned upside down when he was involved in a fatal motor vehicle accident at the hands of a drunk driver on May 16, 2025. *Id.* ¶ 29. Although Plaintiff did not lose his life like several other passengers in the vehicle, he did suffer "a fractured sternum, and a traumatic brain injury with loss of consciousness." *Id.* These injuries had an undeniable impact on Plaintiff's trajectory as a medical school student as he came away from the accident diagnosed with specific learning disability, post-traumatic stress disorder ("PTSD"), post-concussive syndrome, and specific memory difficulty. *Id.* ¶ 3; ECF No. 76-3 ("Neuropsychological Assessment") at 9. Several years later, when Plaintiff failed to complete his graduation requirements on the timeline dictated by University policy, he sought and was denied an accommodation extending his graduation deadline. Compl. ¶¶ 70–71. Plaintiff alleges that the University's denial of his requested accommodation violated Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973. *Id.* ¶ 8.

Plaintiff's ADA and Rehabilitation Act claims survived both a motion to dismiss, *see* ECF No. 27, and more recently, a motion for summary judgment, *see* ECF No. 64. Now, over two years into this litigation, the case is queued up for trial, which is presently set for September 29, 2025. ECF No. 74. In preparation for the Final Pretrial Conference, which the Court held on February 28, 2025, *see* ECF No. 73, the Parties filed their pretrial disclosures as required by Federal Rule of Civil Procedure 26(a)(3), including memoranda of facts and contentions of law, witness lists, and exhibit lists. One such filing sparked the instant Motion.

That filing was the University's expected witness list, filed on January 21, 2025, pursuant to Federal Rule of Civil Procedure 26(a)(3)(A)(i). *See* ECF No. 69. Under Rule 26, Parties must promptly file "the name, . . . the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises." Fed. R. Civ. P. 26(a)(3)(A)(i). As part of that witness list, the University included the full names of Plaintiff's parents, a mistake that was later caught by the University. *See* Ex Parte Mot. at 2. The University then, on February 18, 2025, tried to rectify its mistake by requesting the Court strike or seal the erroneously filed witness list. *See id.*

In reviewing the University's request to strike or seal the erroneously filed witness list, the Court "reached the belated, yet curious, conclusion that Plaintiff may not have, at any point during the pendency of this case, moved for leave to proceed anonymously." ECF No. 75 at 2. The Court recognized that "the 'normal presumption in litigation is that parties must use their real names,'" but it found that Plaintiff had not yet overcome that presumption in this case.[1] *Id.* (quoting *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010)). Accordingly, although not raised by any Party, the Court *sua sponte* ordered Plaintiff to file a motion for leave to proceed anonymously so that it could "resolve the important 'balance between [Plaintiff's] need for anonymity and the interests weighing in favor of open judicial proceedings . . . .'"[2] *Id.* at 3 (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000)).

---

[1] In his Motion, Plaintiff makes reference to the Protective Order the Court issued on February 28, 2024, *see* ECF No. 48, and insinuates that the Protective Order permitted the Parties "to protect Plaintiff's identity and personal information from becoming public," Mot. at 2. Not so. The Protective Order makes no mention whatsoever of maintaining the confidentiality of Plaintiff's identity, and the Court most certainly did not analyze the issue under the appropriate legal standard as will be discussed below. And even if Plaintiff (mistakenly) believed the Protective Order served as his basis for maintaining anonymity in pretrial proceedings, the Protective Order expressly states that "[a]ny use of Protected Material at trial shall be governed by a separate agreement or order," thus necessitating a renewed evaluation at this more advanced stage in the proceedings. ECF No. 48 at 4.

[2] Meanwhile, the Court restricted viewing privileges of the erroneously filed pretrial witness list to only the Parties and the Court to mitigate any potential prejudice to Plaintiff. ECF No. 75 at 3–4.

## LEGAL STANDARD

It is a foundational principle that "the common law rights of access to the courts and judicial records are not taken lightly." *Kamehameha*, 596 F.3d at 1042. The Ninth Circuit, therefore, recognizes that "[t]he normal presumption in litigation is that parties must use their real names." *Id.* Such a presumption serves to facilitate the public's "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). "Nevertheless, many federal courts, including the Ninth Circuit, have permitted parties to proceed anonymously when special circumstances justify secrecy." *Advanced Textile*, 214 F.3d at 1067.

The use of pseudonyms is reserved, however, for the "unusual case . . . when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1067–68. The Ninth Circuit has recognized three primary situations where the "unusual case" may arise: "(1) when identification creates a risk of retaliatory physical or mental harm, (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature, and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* at 1068 (internal quotation marks, citations, and alterations omitted). In balancing a party's need for anonymity with potential prejudice to the opposing party and the public at large, courts must consider that the balance "may change as the litigation progresses." *Id.* at 1069.

## DISCUSSION

Plaintiff's asserted rationale for maintaining anonymity stems from his concerns regarding the sensitive nature of his disabilities. Plaintiff contends that his disabilities "carry extreme social stigmatization," a condition that is particularly acute for individuals like himself in the medical field. Mot. at 3–4. If his identity is not kept confidential, he says, "it is reasonably likely if not probable that Plaintiff would suffer reputational and economic harm, as well as harassment and retaliation." Mot. at 3.

The University counters by pointing to the unexceptional nature of Plaintiff's disabilities. Common learning disabilities, like Plaintiff's, are insufficient to justify the cloak of anonymity, according to the University, because a plaintiff's diagnosis must be "sufficiently 'inflammatory' to justify anonymity." Opp'n at 4 (quoting *Doe v. Revature LLC*, No. 2:22-cv-01399-TL, 2023 WL 4583470, at *6 (W.D. Wash. July 18, 2023)). Here, the University argues that "Plaintiff's disabilities fall squarely in the category of disabilities which courts have routinely found do not 'overcome the presumption against anonymous litigation,'" thus undermining Plaintiff's interests in proceeding anonymously. *Id.* at 5 (first citing *Langworthy v. Whatcom Cnty. Superior Ct.*, No. C20-1637-JCC, 2021 WL 1788391, at *5 (W.D. Wash. May 5, 2021); and then citing *Doe v. John F Kennedy Univ.*, No. C-13-01137 DMR, 2013 WL 4565061, at *3 (N.D. Cal. Aug. 27, 2023)).

**I.     Plaintiff's Privacy Interests**

The Court begins by examining Plaintiff's asserted privacy interests, which primarily reflect the reputational injury that Plaintiff claims he will suffer if his identity is connected to this litigation. Specifically, Plaintiff appears concerned that the stigma associated with his medical diagnoses could adversely affect his "ability to be hired, obtain [his] residency, and otherwise successfully complete [his] licensing and practice medicine," in the event he successfully obtains the injunctive relief he seeks in this suit. Declaration of Plaintiff John Doe ("Doe Decl.") ¶ 8, ECF No. 76-2. Plaintiff is further troubled by the "high likelihood of harassment and retaliation in light of the nature of the case." *Id.* ¶ 10.

As an initial matter, there is no freewheeling right to maintain anonymity in ADA actions. *See Langworthy*, 2021 WL 1788391, at *5 ("Nevertheless, while all ADA plaintiffs face [the risk of discrimination], there is no tradition of anonymous ADA litigation."). Plaintiff argues that "there remains pervasive social stigma surrounding disability," but even accepting that premise to be true, the law in the Ninth Circuit only permits plaintiffs to maintain anonymity where their disability is either uncommon or

"freighted with the high risk of stigmatization." *See John F Kennedy*, 2013 WL 4565061, at *3. Courts have repeatedly "emphasized how exceptional and stigmatizing the issues must be to allow anonymity." *Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1146 (N.D. Cal. 2016). Indeed, "[d]isclosure of medical records is part and parcel of judicial proceedings in many types of litigation. . . . That the medical records might include embarrassing or private information is not unusual and does not justify the secrecy of anonymity." *E.L. v. Scottsdale Healthcare Corp. Health Plan*, No. 2:11-cv-00271-REJ, 2011 WL 1748548, at *1 (D. Ariz. May 6, 2011).

Against that backdrop, courts have resisted permitting plaintiffs to proceed anonymously when they suffer from the same types of disabilities as Plaintiff does here. For example, the plaintiff in *Langworthy* suffered from generalized anxiety disorder and PTSD, but the court denied her request for anonymity even after "recogniz[ing] that exposing her disabilities publicly by filing a lawsuit carries some risk that she will experience discrimination." 2021 WL 1788391, at *2, 5. Similarly, the plaintiff in *John F Kennedy* suffered from attention deficit hyperactivity disorder ("ADHD"), but that court reasoned that "[l]earning disabilities such as ADHD are not uncommon, nor are they freighted with the high risk of stigmatization that has been deemed sufficient to allow plaintiffs to proceed under fictitious names." 2013 WL 4565061, at *3; *see also Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*, No. C-12-1830 EMC, 2012 WL 3583023, at *4 (N.D. Cal. Aug. 20, 2012) (concluding that ADHD and attention deficit disorder ("ADD") "are not especially uncommon disorders or that they carry a particular risk of social stigmatization"). Plaintiff's cited disabilities—specific learning disability, PTSD, post-concussive syndrome, and specific memory difficulty—fit comfortably within the class of disabilities deemed insufficiently inflammatory to justify anonymity.

Still, even when a plaintiff suffers from multiple disabilities that, individually, might not justify anonymity, courts have taken a more wholistic approach that considers the plaintiff's entire medical history. *See Doe v. United of Omaha Life Ins. Co.*,

No. 23-cv-02307-JST, 2023 WL 5919287, at *1 (N.D. Cal. Aug. 21, 2023). For instance, in *United of Omaha Life Insurance*, the plaintiff "suffer[ed] from severe major depressive disorder, generalized anxiety disorder, severe cannabis use disorder, opioid use disorder, and insomnia." *Id.* There, even though several of the plaintiff's conditions in isolation would likely not have satisfied the *Langworthy* or *John F Kennedy* courts, the *United of Omaha Life Insurance* court looked to the "combination of conditions" to conclude that the case warranted exceptional treatment as an "unusual" one. *Id.*

True, the *United of Omaha Life Insurance* court seemed to emphasize the plaintiff's substance use disorders as the conditions most deserving of anonymity—conditions that are absent here—but other economic and career consequences related to disclosure of a plaintiff's identity might be severe enough to warrant anonymity. *See Doe v. Elson S Floyd Coll. of Med. at Wash. State Univ.*, No. 2:20-cv-00145-SMJ, 2021 WL 4197366, at *2 (E.D. Wash. Mar. 24, 2021). No one disputes that a plaintiff "suffer[ing] some embarrassment or economic harm is not enough" on its own to justify allowing that plaintiff to proceed anonymously. *See Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981) (citing *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)); *see also Doe v. Amazon.com, Inc.*, No. C11-1709MJP, 2011 WL 13073281, at *3 (W.D. Wash. Dec. 23, 2011) (rejecting bid to proceed anonymously despite acknowledging that "revealing Plaintiff's identity may negatively affect her prospects of being hired as an actress"). But a social stigma coupled together with career consequences may be enough, particularly for medical students. *See Doe v. Clinic*, No. CV-24-01509-PHX-DGC, 2024 WL 4769771, at *2 (D. Ariz. Nov. 13, 2024).

Plaintiff highlights several cases where courts have permitted either current or former medical students to proceed anonymously in litigation against their medical schools based, in part, on the recognition "that failing to obtain a residency was a genuine harm presented by [the plaintiffs'] lawsuit[s]." *Id.*; *see also Elson S Floyd*, 2021 WL 4197366, at *2. In those cases, the courts considered the plaintiffs' mental health issues—which, compared to other cases, were quite benign—along with the fact that their "willingness to

stand up for [their] rights to [their] educational institution[s] could negatively impact [their] ability to match to a residency." *Elson S Floyd*, 2021 WL 4197366, at *2. The plaintiffs in *Clinic* and *Elson S Floyd* suffered from autonomic neuropathy and generalized depression and anxiety, respectively, but the courts accepted the contention that the stigma associated with these conditions could "be severe in a medical career." *Clinic*, 2024 WL 4769771, at *1; *Elson S Floyd*, 2021 WL 4197366, at *2. These cases, thus, support the proposition that the bar is lowered, however slightly, to account for the more sensitive nature of stigmas associated with mental health challenges faced by healthcare professionals.[3]

In light of these precepts, the Court finds that Plaintiff has a modest interest in maintaining his anonymity in this action. Though each of Plaintiff's disabilities, in isolation, do not rise in severity to a level warranting anonymity, the confluence of circumstances he posits substantiates his claim that he may be subjected to an adverse stigma if his identity were to be disclosed. The Court also finds that any reputational damage could be amplified by his desire to match to a residency and continue his medical education.[4]

---

[3] Plaintiff contends that his claim to anonymity is further supported by California Code of Civil Procedure § 3427.3. Mot. at 6. That section provides that, in cases involving the tort of interference with access to health care, courts "shall take all steps reasonably necessary to safeguard the individual privacy and prevent harassment of a health care patient, licensed health practitioner, or employee, client, or customer of a health care facility how is a party or witness in the proceeding." Cal. Civ. Code § 3427.3. That provision of California statutory law is, by its own terms, plainly inapplicable to the instant lawsuit, which seeks relief under the ADA and Rehabilitation Act.

[4] The Court declines to credit Plaintiff's additional argument that "it is reasonably likely if not probable that Plaintiff would suffer . . . harassment and retaliation if his identity and personal information are not kept confidential." Mot. at 3. When a plaintiff fears retaliation for filing suit, courts are instructed to consider: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability to such retaliation." *Advanced Textile*, 214 F.3d at 1068 (internal citations omitted). Here, Plaintiff sheds no light on the nature of the purported retaliation and proffers no substance validating his fears. Plaintiff's speculation is inadequate to constitute a valid basis for his request for anonymity. *See Quinteros v. InnoGames*, No. C19-1402 RSM, 2019 WL 5957456, at *2 (W.D. Wash. Nov. 13, 2019) ("Plaintiff certainly *may* face further harassment, but Plaintiff does not establish a reason to believe that such harassment is *likely* to occur."); *Revature*, 2023 WL 4583470, at *5 ("At most, Plaintiff speculates that he might endure harassment at his current employment, but he provides

## II. Potential Prejudice to the University and Public

The Court next turns to the other side of the ledger—potential prejudice to the University and the public's interest. To begin, it is apparent that the University has had no trouble litigating this case for the past two-and-a-half years through which Plaintiff has maintained his anonymity. The University was readily able to discern Plaintiff's identity from the outset of this case, and not once did it raise the prospect that its right to full and fair discovery procedures had been diluted through Plaintiff's use of a pseudonym. Indeed, the University itself was the party that requested the Court strike or seal the erroneously filed pretrial disclosure that prompted the Court to *sua sponte* order Plaintiff to file the instant Motion; there were no signs of prejudice to the University whatsoever when the public disclosure of Plaintiff's parents' names on the docket came to light.

Nevertheless, the mere fact that Plaintiff's anonymity has not been contested thus far does not obviate the need to reconsider the balance of interests "at each stage of the proceedings." *Revature*, 2023 WL 4583470, at *7 (citing *Advanced Textile*, 214 F.3d at 1068). Now, with trial quickly approaching, the University argues that it "will be prejudiced if Plaintiff is allowed to proceed anonymously." Opp'n at 8. The University's point is well taken.

Courts routinely recognize that "a jury might improperly draw implications that [a plaintiff's] claims have merit from the court's allowance of anonymity." *Does v. Univ. of Wash.*, No. C16-1212JLR, 2016 WL 9241274, at *2 (W.D. Wash. Aug. 29, 2016). The Ninth Circuit has ratified lower court determinations that "plaintiffs' use of pseudonyms might prejudice the jury in their favor or undermine efforts to impeach them," *Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015), and indeed, "allowing a plaintiff to proceed under a pseudonym at trial would communicate 'a subliminal comment on the harm the alleged encounter with the defendant has caused the plaintiff,'" *Doe v. Rose*,

---

nothing to show that this is likely, other than his suspicion that prior employers acted against him based on his disability.").

No. CV-15-07503-MWF-JCx, 2016 WL 9150620, at *3 (quoting *Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014)).

Plaintiff's own cited cases recognize the potential prejudice that could present itself to the opposing party at trial. In *Clinic*, the plaintiff conceded that "her name can be used in discovery and at trial so long as publicly filed documents refer to her only by pseudonym." 2024 WL 4769771, at *2. And in *Elson S Floyd*, the court agreed with the medical school-defendant that "witnesses, who know Plaintiff by her true name, may come across as less credible if they are struggling to remember to use Plaintiff's pseudonym." 2021 WL 4197366, at *3 (citing *Ayers*, 789 F.3d at 946). Plaintiff posits that jury instructions and other procedural safeguards can mitigate this acknowledged risk of prejudice to the University, but courts have called into question the efficacy of such protections. *See Rose*, 2016 WL 9150620, at *3 (finding prejudice to the defendant by the plaintiff's use of a pseudonym at trial "to be strong enough that a limiting instruction would not sufficiently eliminate" it).

Just as the risk of prejudice to a defendant increases as trial nears, so too does "the public's interest in disclosure." *Id.* (first citing *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014); and then citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599 (1980)). As the University aptly notes, "our courts belong to the people, and the public and press have a right to look over our shoulders to see how their court system is being used. This consideration counsels in favor of requiring true names of those who seek to sue others." *Doe v. NFL Enters., LLC*, No. C 17-00496 WHA, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017) (first citing *Kamehameha*, 596 F.3d at 1042–43; then citing *Jessica K. by and through Brianna K. v. Eureka City Schs. Dist.*, No. C 13-05854 WHA, 2014 WL 689029, at *2 (N.D. Cal. Feb. 21, 2014); and then citing *Doe v. Texaco, Inc.*, No. C 06-02820 WHA, 2006 WL 2850035, at *6 (N.D. Cal. Oct. 5, 2006)). Closing the courtroom doors is perhaps "the only practical way of revealing Plaintiff's name to the jury alone," *Rose*, 2016 WL 9150620, at *3, but the Supreme Court has noted "that historically both civil and criminal trials have been presumptively open,"

*Richmond Newspapers*, 448 U.S. at 580 n.17.

Of course, other public interest factors conversely weigh in favor of permitting Plaintiff to proceed anonymously. Plaintiff raises "the potential chilling effect" compelled disclosure of his identity may have on other purported victims of disability discrimination who similarly seek to vindicate their rights in court. Reply at 2. The Ninth Circuit agrees with the prospect of that risk, having recognized that "suits to enforce . . . statutory rights benefit the general public" and that chilling such suits is against the public interest. *Advanced Textile*, 214 F.3d at 1073. With respect to the ADA specifically, the Supreme Court has acknowledged "the sheer volume of evidence demonstrating the nature and extent of unconstitutional discrimination against persons with disabilities in the provision of public services," leading the Court to find "clear beyond peradventure that inadequate provision of public services and access to public facilities was an appropriate subject for prophylactic legislation." *Tennessee v. Lane*, 541 U.S. 509, 528–29 (2004). Maintaining a viable pathway for citizen suits alleging disability discrimination is, thus, an essential part of Congress's chosen remedial scheme.

Further, Plaintiff warns that, if unable to proceed anonymously, he "will have to seriously consider a decision to abandon his lawsuit in order to protect his identity and highly sensitive and personal information from becoming known to the public." Mot. at 6–7. Assuming Plaintiff's warning to be sincere, if the Court were to prohibit Plaintiff from using a pseudonym, it could pose a major obstacle to seeing this case through to completion after over two years of litigation. Because the public "has an interest in seeing this case decided on the merits[,] . . . permitting [Plaintiff] to use [a pseudonym] will serve the public's interest in this lawsuit by enabling it to go forward." *Advanced Textile*, 214 F.3d at 1073.

Finally, Plaintiff contends that allowing him to maintain use of a pseudonym will not harm the public interest because his identity is not central to the issues raised by this case, Reply at 2 (citing *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 854 (9th Cir. 2023)), but that misunderstands this part of the inquiry. The public's right to know a plaintiff's

identity may be lessened "where the merits of the case do not hinge on the individual facts of the anonymous party, such as litigation that challenges government policies or is of great public significance." *Revature*, 2023 WL 4583470, at *7 (citing *Advanced Textile*, 214 F.3d at 1071 n.15). Put differently, allowing anonymity is more appropriate when the case is "one with widespread implications of interest to the public at large." *Advanced Textile*, 214 F.3d at 1072 (cleaned up). This is not one of those cases. This case revolves around Plaintiff, his idiosyncratic medical condition, and his unique journey as a medical student at the University. "[W]hen an individual brings a claim with respect to which her disabilities are central, the public has a substantial interest in knowing about those disabilities so it can meaningfully oversee the Court's exercise of its judicial power." *Langworthy*, 2021 WL 1788391, at *5.

In sum, the Court finds that Plaintiff's anonymity has posed little threat to the University and the public at large thus far, but the potential prejudice to the University and public has grown steadily as this case progressed through summary judgment and moves toward trial. In particular, whereas the potential prejudice to the University was nearly nonexistent until now, if Plaintiff maintains his pseudonym at trial, it will appreciably risk prejudicing a jury in his favor.

### III. Balancing the Factors

After weighing Plaintiff's interests in maintaining anonymity against the potential prejudice to the University and the public's interests, the Court retroactively finds that Plaintiff's use of a pseudonym thus far in this litigation has been substantially justified. Though not as severe as the stigma associated with other conditions that have justified anonymity, the aggregate stigma that Plaintiff may face due to his multitude of mental health conditions, coupled with the particularly sensitive context of future healthcare professionals that are personally impacted by such conditions, has outweighed any prejudice to the University (of which there was none) and the minimal interests of the public. Accordingly, Plaintiff's Motion is **GRANTED IN PART** to the extent Plaintiff wishes to proceed anonymously in pretrial proceedings. Further, because allowing

Plaintiff's parents to proceed with a fictitious name is likely the only way to maintain the integrity of Plaintiff's own identity in pretrial proceedings, the University's *Ex Parte* Motion to Seal is **GRANTED**. *See, e.g.*, *Doe v. USD No. 237*, No. 16-2801-JWL-TJJ, 2019 WL 687888, at *2 (D. Kan. Feb. 19, 2019) ("Jane Doe Witness's father's name shall also be redacted to further protect his daughter's identity."). The Court will **STRIKE** the University's erroneously filed pretrial disclosures pursuant to its inherent authority to manage its docket. *See Cahill v. Insider Inc.*, No. 24-2199, 2025 WL 838264, at *4 (9th Cir. Mar. 18, 2025).

However, due to the elevated risk of prejudice to the University and the enhanced public interest if this case goes to trial, Plaintiff's Motion is **DENIED IN PART** to the extent Plaintiff wishes to proceed anonymously at a jury trial.[5] The Court has no doubt that Plaintiff may feel troubled by revealing his identity to the jury and the courtroom, but the Court simultaneously appreciates his concern alongside "the paramount importance of open courts," *Kamehameha*, 596 F.3d at 1046, and the necessity of ensuring a fair and impartial trial for all litigants, *see Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir. 1986).

///

///

///

---

[5] At the Final Pretrial Conference, held on February 18, 2025, Plaintiff's counsel represented that his intention is to pursue a jury trial to determine the University's liability, and if necessary, a subsequent bench trial to pursue injunctive relief, an equitable remedy to be determined by the Court. In his Reply, Plaintiff seems to implicitly reiterate that he does indeed anticipate presenting this case to a jury. *See* Reply at 2 ("Here, the Court could simply provide an instruction to all witnesses prior to the stand, which will also serve as a reminder to the jury that proceeding anonymously should in no way effect their perception of the case."). The Court's analysis above is, correspondingly, premised on the assumption that allowing Plaintiff to use a pseudonym *before a jury* could be prejudicial to the University. The Court leaves open the possibility that its analysis could come out differently if this case were to exclusively involve a bench trial. *See Univ. of Wash.*, 2016 WL 9241274, at *2 ("Doe Plaintiffs seek only declaratory and injunctive relief. Thus, the court agrees that this is not a case in which a jury might improperly draw implications that Plaintiffs' claims have merit from the court's allowance of anonymity." (citing *Dollar Sys., Inc. v. Avacar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989))).

**CONCLUSION**

For the reasons stated above, the Court:

(1) **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Leave to Proceed Anonymously (ECF No. 76);

(2) **GRANTS** Defendant's *Ex Parte* Motion to Strike or Seal Filings (ECF No. 72); and

(3) **STRIKES** Defendant's Fed. R. Civ. P. 26(a)(3) Pretrial Disclosures (ECF No. 69).

To the extent the Parties wish to redact Plaintiff's name in the future if it appears in publicly filed exhibits, they are directed to follow proper sealing procedures as outlined in this Court's prior Orders on March 27, 2025, and April 7, 2025. *See* ECF No. 85 at 1–2; ECF No. 96 at 1.

**IT IS SO ORDERED.**

Dated: April 7, 2025

Hon. Janis L. Sammartino
United States District Judge